852 F.2d 568
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gary Allen BENNETT, Petitioner-Appellee,
v.
UNITED STATES PAROLE COMMISSION, and Warden, Respondents-Appellants.
 No. 86-5404.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1988.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and BENJAMIN F. GIBSON, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The respondents-appellants United States Parole Commission and Warden appeal the district court's judgment directing the Parole Commission to grant petitioner-appellee Bennett a new parole hearing and limiting the information the Commission may consider in determining Bennett's eligibility for parole. We reverse.
 
 
 2
 In 1979, petitioner Gary Allen Bennett pleaded guilty, pursuant to an unwritten plea bargain, to two counts of an indictment charging seven counts of bank robbery. The terms of the plea bargain are in dispute.
 
 
 3
 Respondents claim the only agreement was that petitioner would plead guilty to two counts of bank robbery in exchange for dismissal of the remaining five counts of the indictment. Bennett claims the agreement was that he would plead guilty to the two bank robbery counts in exchange for dismissal of the remaining five counts and that, in addition, the Parole Commission would not consider the five dismissed counts in determining Bennett's eligibility for parole, and that Bennett would serve no more than 60 to 72 months in confinement. Following his plea of guilty, Bennett was sentenced to two twelve-year terms.
 
 
 4
 At Bennett's initial parole hearing, the Parole Commission determined that Bennett would serve between 100 and 148 months. Bennett then sought a writ of habeas corpus in the Western District of Tennessee. The district court found that Bennett had proved, by a preponderance of the evidence, that his plea agreement contained an implied condition that he would serve only 60 to 72 months in confinement. The district court then directed the Parole Commission to conduct a new parole hearing at which the five dismissed counts of bank robbery could not be considered in determining Bennett's eligibility for parole.
 
 
 5
 Following the district court's decision, the respondents filed a "motion to reconsider" the district court's order requiring a new Parole Commission hearing. The court treated the motion as one for relief from judgment pursuant to Rule 60(b) of the Fed.R.Civ.P. and denied the motion because the affidavit and motion did not indicate "mistake, inadvertance, surprise, excusable neglect, newly discovered evidence, or any other reasons justifying relief from the order."
 
 
 6
 The Parole Commission complied with the district court's order and granted a hearing which resulted in a decision that Bennett be eligible for parole on April 11, 1986. The district court, on January 9, 1986, entered a final judgment dismissing Bennett's petition for writ of habeas corpus due to the Parole Commission's determination. Bennett was paroled on May 20, 1986.
 
 
 7
 Subsequently, on October 6, 1987, Bennett pled guilty to bank robbery and is presently serving a seven-year sentence in California. As a result, following completion of his seven-year California sentence, he will be returned to federal custody, his parole will be revoked, and he will lose credit for time spent on parole pursuant to 18 U.S.C. Sec. 4210(b)(2).
 
 I.
 
 8
 It is undisputed that prior to Bennett's guilty plea, the government agreed that five counts of unarmed bank robbery would be dismissed with prejudice if Bennett pled guilty to the two remaining counts in the indictment. During the plea proceedings, the court asked Bennett, "Has anybody made you any promises to get you to enter these pleas besides the promise the other charges against you would be dismissed?". Bennett responded, "No, your Honor". The court then asked Bennett's attorney, "Is that right, Mr. Geller?". Mr. Geller responded, "That's correct, your Honor. For the record, counts one through five will be dismissed". Some weeks later, after receiving a pre-sentence investigative report, the district court sentenced Bennett to two twelve-year sentences to run concurrently. The pre-sentence report stated that Bennett admitted committing all seven robberies and that it was expected by the report's author that Bennett would serve 60 to 72 months. At the sentencing hearing, in addition to his response to the court's question, Bennett's counsel made the following statement:
 
 
 9
 I have read and discussed the pre-sentence report ... and I point out that I believe [the defendant] was honest and candid ... He related all the facts and circumstances surrounding the bank robberies to which he entered a guilty plea and also related all the facts and circumstances surrounding the ones that will be dismissed here today. In addition, he admitted all of his past criminal involvement and didn't try in any way to minimize the severity of it or his role in connection with that. (Emphasis added).
 
 
 10
 On October 18, 1985, the district court conducted an evidentiary hearing on Bennett's petition for writ of habeas corpus. Bennett testified that he believed, as a result of statements made by his attorney, that the plea bargain agreement included a promise that the Parole Commission would not consider the five dismissed charges in any actions taken regarding his parole and that he would serve no more than 60-72 months in confinement. In support of his contention, Bennett presented three documents: 1) a letter from the sentencing judge which stated that he expected that Bennett would "have a good chance of being paroled in 60 to 72 months depending upon [his] performance while in prison", although the judge noted that he "had no control over the Parole Commission", 2) the pre-sentence report which stated that it was likely that Bennett would serve 60 to 72 months; and 3) a letter from the attorney who represented Bennett at the time of the plea bargain which stated that the attorney's expectation was that Bennett would be released in 60 to 72 months, but noting that there was nothing in his file to support that belief.
 
 
 11
 The respondent presented an affidavit by an Assistant United States Attorney who reviewed the file, stating that there was no information or suggestion in the file that the plea agreement included anything other than the dismissal of five counts of the seven-count indictment.
 
 
 12
 Following the evidentiary hearing, the district court found that the government "offered no convincing evidence that an implied plea agreement did not exist" and held that the three documents presented by Bennett corroborated his testimony concerning the terms of his plea bargain. The court stated that Bennett had proved by a preponderance of the evidence the plea agreement included an understanding that he would serve only 60 to 72 months in confinement. Thus, the district court ordered the Parole Commission to conduct a new hearing.
 
 
 13
 In support of the motion to reconsider the court's order, respondents filed an affidavit from the prosecuting attorney in charge of the case at the time Bennett's plea of guilty was offered and received. The motion explained that respondents had been attempting to obtain an affidavit from the government prosecutor, but had been unable to do so because the attorney had been traveling in China. The attorney's affidavit stated that he had no recollection of any agreement that the dismissed counts would not be considered by the Parole Commission. He also stated that it was his policy and practice to include any conditions of a plea agreement on the file jacket, and that none appear on the file jacket in petitioner's case.
 
 II.
 
 14
 Respondents argue that Fed.R.Crim.P 11(e)(2) precludes Bennett from proving an implied promise of a plea bargain agreement where he failed to give notice of the additional condition at the plea hearing. But Rule 11(e)(2), which states, "If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered," imposes a duty upon the trial court, not "the parties." Additionally:
 
 
 15
 The fact that the appellant himself in questioning by the court denied that there had been any prosecutorial promises to induce the plea does not estop him from seeking to withdraw his plea.
 
 
 16
 United States v. Roberts, 570 F.2d 999, 1007 (D.C.Cir.1977), aff'd on other grounds, 445 U.S. 552 (1980).
 
 
 17
 Therefore, although Bennett's statement to the trial court that no promise had been made to him save the promise that the remaining five bank robbery counts would be dismissed does not estop him from later contending otherwise, the burden is his, to prove that there was an implied agreement that he would serve only 60-72 months of his sentence. In the context of plea bargain agreements, "what the parties agreed to is a question of fact to be resolved by the District Court. Therefore, this Court's review of that question is subject to the clearly erroneous standard." Baker v. United States, 781 F.2d 85, 90 (6th Cir.), cert. denied, 93 L.Ed.2d 719 (1986).
 
 
 18
 Disputes concerning the terms of a plea agreement are resolved by the district court on the basis of adequate evidence. United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir.1979); United States v. Strawser, 739 F.2d 1226, 1230 (7th Cir.), cert. denied, 469 U.S. 1038 (1984). In determining whether there is adequate evidence to support a claim that implied or conditional terms exist, the district court is to apply a presumption of verity to statements made by the defendant at the plea hearing. Blackledge v. Allison, 431 U.S. 63 (1977).
 
 
 19
 [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.
 
 
 20
 Id. at 73-75. In determining whether the defendant has overcome the "formidable barrier" of his earlier denials, the district court must be mindful that plea agreements are, by nature, contractual and subject to contract law standards. Baker, 781 F.2d at 90.
 
 
 21
 To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court....
 
 
 22
 Id.
 
 
 23
 In light of the above standards, we conclude that the district court committed clear error in finding that an implied condition, to the effect that he would serve only 60-72 months of his sentence, was contained in Bennett's plea bargain agreement.
 
 
 24
 We observe at the outset, that, aside from the inadequacy of the evidence to support Bennett's claims of an agreement beyond that which he acknowledged at the plea-taking, the district court appears to have erred by allocating the burden of proof on issue between the parties instead of assigning it to the plaintiff. Blackledge makes clear that the burden is upon the defendant who is claiming that an additional condition to the plea agreement exists, to prove it. Blackledge, 431 U.S. at 73-75. The district court, however, appears to have assigned to the respondents the burden to disprove Bennett's claim, by stating that the respondents "offered no convincing evidence that an implied agreement did not exist." Respondents did not have the burden of proving that an implied agreement did not exist; Bennett had the burden of proving it did.
 
 
 25
 In all events, the evidence offered by Bennett to prove the existence of a plea bargain beyond that which he acknowledged before pleading guilty was simply inadequate. The district court found that the letter from the plea-taking judge, the pre-sentence report, and the letter from Bennett's attorney corroborated Bennett's otherwise unsupported statement that such an agreement existed. A review of each of these documents makes clear, however, that they do not support Bennett's claim. The letter from the judge who accepted the plea stated that the judge expected Bennett "would have a good chance of being paroled in 60-72 months" and that whether he would or not, would be dependent upon his behavior while in prison. The judge's expectation of a "good chance" of parole within 60-72 months evidences, at best, something about the judge's state of mind at the time of the plea hearing. A plea agreement, however, is contractual in nature and governed by standards of contract law. Baker, 781 F.2d at 90. The expectations of a third person are irrelevant to the objective terms of an agreement reached by the parties to the contract and reviewed in open court on the record. Even if the judge's expectation was proof that a 60-72 month sentence had been discussed, it is not proof that any promise had been made to Bennett, explicitly or implicitly, that in return for his guilty plea, his sentence would not exceed that range, especially when on the record, Bennett stated that no such promises had been made.
 
 
 26
 Similarly, the pre-sentence report does not demonstrate that an implied agreement existed. It was not prepared by any party to the agreement, and, in all events, it does not assert that there was any agreement of the kind claimed by the petitioner. The report states:
 
 Term likely to be served:
 
 27
 If defendant is committed, it is likely he will serve between 60 and 72 months according to parole commission guidelines (emphasis added).
 
 
 28
 Finally, the letter from Bennett's attorney stated he "shared" the Judge's feeling that Bennett would be paroled within 60-72 months. It also stated that there was no documentary evidence to support his feeling. The lack of documentary evidence, coupled with the attorney's statement at the plea hearing that no additional promises existed other than the promise that five bank robbery charges would be dropped, supports a finding that no implied agreement existed.
 
 
 29
 The district court also heard evidence that an implied agreement did not exist. At the plea hearing, the Judge asked both Bennett and his attorney whether any promises, other than the promise that five charges would be dropped, were made to Bennett. Both responded in the negative. This court has stated:
 
 
 30
 This Court agrees with the reasoning of the Fifth Circuit in Moore v. Estelle, 526 F.2d 690 (5th Cir.), cert. denied, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976), that where the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 526 F.2d at 696-97, quoting Jackson v. United States, 512 F.2d 772, 773 (5th Cir.1975).
 
 
 31
 Baker, 781 F.2d at 90. An Assistant United States Attorney, through affidavit, also stated that Bennett's file contained nothing suggesting that the plea agreement contained anything other than the promise that five counts of bank robbery would be dropped for Bennett's plea of guilty to two counts.
 
 
 32
 The evidence presented by Bennett to support the claimed implied agreement was not sufficient to overcome the "formidable barrier" of his open court denial that any agreement existed save that which was explained to the trial judge, acknowledged by Bennett, and acted upon by the Parole Commission. Blackledge, 431 U.S. at 13. We conclude that the district court clearly erred in finding that such an agreement existed.
 
 
 33
 For those reasons, the judgment of the district court is REVERSED and its order to the Parole Commission is VACATED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation