**David Wayne BAKER,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

**No. 85–5561.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1985.
Decided Jan. 15, 1986.

---

David Wayne Baker, Sandstone, Minn. pro se.

Errol Cooper, Jr., argued, Lexington, Ky., for petitioner-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John M. Compton, argued, for respondent-appellee.

Before KENNEDY and GUY, Circuit Judges and WOODS *, District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Baker appeals from the District Court's order overruling his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Appellant Baker is proceeding *pro se* on appeal except for purposes of oral argument.

On August 7, 1984, Baker and a co-defendant pleaded guilty to an indictment for violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a) and (b), distributing cocaine. The plea was entered pursuant to an agreement in which the United States agreed to move for dismissal of another indictment of a similar offense on a later occasion. At a sentencing hearing on September 21, 1984, Baker was sentenced to fifteen years' imprisonment, the maximum under the statute. Baker filed a Fed.R.Crim.P. 35 motion for reduction of the sentence. The District Court denied his motion on March 7, 1985. On April 23, 1985, Baker moved the court to vacate the sentence pursuant to 28 U.S.C. § 2255. The court overruled this motion on June.3, 1985.

Baker raises three issues on appeal. He alleges that his guilty plea was not knowing and voluntary as it was induced by

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

erroneous information about the maximum possible sentence he could receive and as his plea bargain included a promise, later broken, that the government would stand mute and take no stance at his sentencing. Affidavits offered by Baker relate that the defense attorneys involved (Baker's and his co-defendant's) understood that the government had agreed to take no stance and/or to stand mute. The government did, in fact, make a statement at sentencing; it did not request any particular sentence. Baker further alleges that he was deprived of effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as his attorney advised him he could receive up to 75 years if he were found guilty on both indictments and his sentence was enhanced because of a prior marijuana distribution conviction, at that time on appeal. Finally, Baker alleges that the District Court erred in overruling his present motion without holding an evidentiary hearing.

## I.

■ Baker correctly argues that for a guilty plea to be valid it must be both knowing and voluntary. *Brady v. United States*, 397 U.S. 742, 747, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). Pursuant to Fed.R.Crim.P. 11, the District Court properly examined Baker as to his competence to plead, his understanding of the consequences of his actions in pleading guilty, and his voluntariness, before accepting the plea. Baker claims, however, that his plea was not knowing and voluntary because he was wrongfully "threatened" with enhancement of his sentence if he went to trial and because he agreed to plead in part because of a broken promise by the government to stand mute and take no stance at his sentencing.

■ The first allegation is without merit. Baker does not allege in his petition or supporting memo, nor do his affidavits contend, that anyone but defense counsel informed him of the chance of enhancement to 75 years. The record reflects that the court itself properly informed Baker of the maximum jail sentence he could receive before accepting the plea. The court stated:

> Do you understand that the maximum possible sentence that could be handed down by the court would be imprisonment for a term of 15 years, ... or in case if you have a prior offense, a maximum sentence of incarceration of 30 years....[1]

Tr. 18.

Baker's second allegation, that his plea bargain was based in part on the government's promise to take no stance and to stand mute at sentencing, and that since this promise was not kept his plea was not voluntary, is also without merit. The transcript reveals that the court asked Baker, "Has anyone made any kind of a promise or made any kind of representation to you to induce you to enter this plea of guilty?" Defendant replied, through retained counsel, "Your honor, the government has agreed to file a motion to dismiss indictment number 84–22 upon entering the plea of guilty here." The colloquy continued:

THE COURT: Both counts?

MR. JOLLY: Yes.

THE COURT: Any other understanding?

MR. JOLLY: No other understanding whatsoever.

THE COURT: Is this correct, Mr. Dause?

MR. DAUSE: That's correct, your honor.

THE COURT: Mr. Baker, is that your understanding?

MR. BAKER: That's my understanding.

BY THE COURT:

Q. Mr. Baker, did anyone attempt to prophesize what the court might do in passing sentence in this case upon your decision to plead guilty to this indictment, did they tell you what the court would do?

---

1. For further consideration of the enhancement issue as it involves Baker's counsel, *see* Part II, *infra*.

A. Oh, no, sir.

Tr. 19.

Baker, either himself or through his attorney, had the opportunity to inform the court of the government's alleged promise to stand mute and take no stance. As the second circuit stated in *United States v. Corsentino*, 685 F.2d 48 (2d Cir.1982), "It is not uncommon for federal prosecutors in this Circuit and elsewhere to include in their plea agreements with defense counsel a commitment to 'take no position' at sentencing." 685 F.2d at 49. There is no reason to believe that such a revelation in this case would have shocked the court below or would otherwise have prejudiced defendant. It was incumbent upon him to reveal to the court all the terms of the plea agreement when expressly asked to do so by the court.

The Supreme Court has addressed this issue at length in *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). In *Blackledge*, defendant claimed in his petition for habeas corpus that he was promised a maximum sentence of ten years by his attorney, who had allegedly consulted with the prosecutor and the judge. He was in fact sentenced to 17–21 years. The Supreme Court held that defendant was entitled to an evidentiary hearing "[i]n the light of the nature of the record ... and of the ambiguous status of the process of plea bargaining at the time the guilty plea was made...." 431 U.S. at 76, 97 S.Ct. at 1630. The "nature of the record" alludes to the fact that the record of the plea hearing consisted only of a printed form that the clerk checked off as defendant answered each question and the fact that there was no transcript whatsoever of the sentencing hearing. 431 U.S. at 66–67, 97 S.Ct. at 1625–26. The "ambiguous status" of the plea bargaining process refers to the fact that defendant was arraigned 37 days after *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello* the Supreme

Court recognized the legitimacy of plea bargaining, a process that had been shrouded in secrecy up to that time. 431 U.S. at 76–77, 97 S.Ct. at 1630–31.

The *Blackledge* Court noted that under the North Carolina procedure afforded defendant,

[n]o transcript of the proceeding was made. The only record was a standard printed form. There is no way of knowing whether the trial judge in any way deviated from or supplemented the text of the form. The record is silent as to what statements Allison, his lawyer, or the prosecutor might have made regarding promised sentencing concessions. And there is no record at all of the sentencing hearing three days later, at which one of the participants might well have made a statement shedding light upon the veracity of the allegations Allison later advanced.

431 U.S. at 77, 97 S.Ct. at 1631.

The instant case is manifestly distinguishable from *Blackledge*. In fact, this case exemplifies the type of "commendable procedures" the *Blackledge* Court states would show "whether any bargain did exist...." 431 U.S. at 79–80, 97 S.Ct. at 1632–33. On the record at the plea hearing, Baker was advised that he must answer the questions truthfully, *under penalty of perjury*. The court inquired into his competence to plead and into his understanding of the plea process and of his rights were he to go to trial. The court then inquired into the terms of the bargain, *supra*, and received the response that the government had agreed only to move to dismiss indictment 84–22. The court then asked defense counsel and prosecutor and Baker if there were any other terms. All three denied there were, on the record. The sentencing hearing was also conducted on the record, which is available for scrutiny.[2]

2. The *Blackledge* Court distinguished two circuit court cases, *United States v. Tweedy*, 419 F.2d 192 (9th Cir.1969) and *Lynott v. United States*, 360 F.2d 586 (3d Cir.1966) on the ground that there was a record of the sentencing proceedings in those cases. 431 U.S. at 78 n. 15, 97 S.Ct. at 1631 n. 15.

Two earlier cases relied upon in *Blackledge* are also clearly distinguishable from the instant case. In *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), petitioner alleged his plea was coerced because of physical abuse, illness, heroin addiction and a prolonged interrogation. The Court, per curiam, stated that "[o]n this record" it could not conclude with assurance that petitioner was entitled to no hearing under section 2255. 411 U.S. at 215, 93 S.Ct. at 1462. No allegation of any coercion even approaching that in *Fontaine* has been made by Baker. He merely alleges that the government promised to stand mute and to take no stance at sentencing, and then did not do so. In *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), petitioner claims the prosecutor promised him a lenient sentence and then threatened him if he even told *his own lawyer* about the deal. 368 U.S. at 489–90, 82 S.Ct. at 511–12. The *Machibroda* Court remanded for a hearing, but noted that district courts do have discretion in these matters and that "this case is not far from the line." 368 U.S. at 496, 82 S.Ct. at 514. In stark contrast to *Machibroda*, the petitioner before us admits in his allegations that all parties before the court knew of the alleged promise. He does not even claim that he was threatened not to disclose any terms of the bargain to anyone.

■ This Court agrees with the reasoning of the fifth circuit in *Moore v. Estelle*, 526 F.2d 690 (5th Cir.), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976), that where the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 526 F.2d at 696–97, *quoting Jackson v. United States*, 512 F.2d 772, 773 (5th Cir.1975). Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties.

Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract-law standards.'" *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980), *quoting United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979). To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court, and that therefore there was no breach of agreement in this case. Defendant's plea was knowing and voluntary.

■ Furthermore, what the parties agreed to is a question of fact to be resolved by the District Court. Therefore, this Court's review of that question is subject to the clearly erroneous standard. *Krasn*, 614 F.2d at 1233. The Court is unable to conclude that the District Court was clearly erroneous in finding that the "clear and complete" record "indicates no such [standing mute] agreement."

■ We note additionally that once it became clear at the sentencing hearing that the government did not intend to stand mute, it would have been reasonable for defendant, who was present and represented by counsel, to object if the agreement did indeed consist in part of this promise. No objection was raised, however. It is significant that in this case the alleged promise was broken, if at all, right before defendant and in open court, unlike the situation in the cases discussed above. The defendant's failure to object to the government's statement at sentencing constitutes waiver in this situation.

## II.

■ Baker argues that he was deprived of the effective assistance of counsel when

his attorney advised him that his sentence could be enhanced because of prior drug-related conviction. Under *Hill v. Lockhart*, — U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if a defendant has been deprived the effective assistance of counsel so that his sixth amendment right to counsel has been violated, the plea will not be upheld on review. *Strickland* set up a strict test for defendant to meet, operating under "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." 104 S.Ct. at 2066. The challenged conduct in this case is counsel's alleged advice that Baker's sentences for both indictments, should he be convicted, could be enhanced because of a prior drug-related conviction. That conviction was for conspiracy with intent to distribute marijuana and possession with intent to distribute marijuana; defendant was convicted in February of 1983. Under 21 U.S.C. 841(b)(1)(B), Baker's maximum possible sentence for conviction on either or both of the indictments for distribution of cocaine could have been doubled if his prior conviction had "become final."[3]

Baker argues that his marijuana conviction had not "become final" within the meaning of the statute, and that therefore his sentence could not have been enhanced. He relies on *United States v. Allen*, 566 F.2d 1193 (3d Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), for the proposition that a prior conviction is not "final" for purposes of enhancement of sentence when it is pending on appeal. *Accord Williams v. United States*, 651 F.2d 648 (9th Cir.1981); *United States v. Lippner*, 676 F.2d 456 (11th Cir. 1982).

■■■ Although this Circuit has not spoken on the question of the interpretation of "final" in section 841(b)(1)(B), assuming *arguendo* that we would follow *Allen* we do not believe that this advice is so erroneous as to fall below the objective standard of reasonably effective assistance enunciated in *Strickland, supra*. Counsel may well have been simply detailing the worst case scenario: that the marijuana appeal would be resolved against Baker before sentencing. In that event, were he to be convicted at trial on both indictments, his sentence could lawfully have been enhanced up to the level noted by his lawyer. ·Counsel for Baker may have also been predicting that retroactive enhancement was a possibility, that is that even if his appeal were still pending when he was sentenced on the two indictments, he could eventually be sentenced to the enhanced term if he lost the appeal. Such advice would not be inappropriate, especially in light of the recently decided case, *Pennsylvania v. Goldhammer*, — U.S. ——, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985)(double jeopardy clause does not bar resentencing for a conviction on which sentence was suspended after the defendant obtains a reversal of the conviction on which sentence was imposed). In fact, counsel for defendant might well have been remiss had he not informed Baker of the maximum sentence possible after enhancement.

■■■ As the Supreme Court warned in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." 397 U.S. at 770, 90 S.Ct. at 1448. The Court concludes that the error, if indeed there was one, was not of a magnitude to deprive Baker of reasonably effective assistance of counsel under *Strickland, supra*. Furthermore, we hold that Baker has failed to prove, or even sufficiently allege, the prejudice required to satisfy the second, independent prong in *Strickland, supra*.

**3.** Baker alleges that his attorney advised him he could receive a combined sentence of 75 years were he to be convicted of both crimes. This figure was apparently arrived at by doubling the 15 years for indictment 84–23 and doubling the sentence for distribution on indictment 84–22 and adding the 15 years for conspiracy (21 U.S.C. § 846) on indictment 84–22.

### III.

■ Section 2255 provides that in an action to vacate or correct the sentence, the court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no rlief...." Baker argues that he was entitled to a hearing before denial of his motion. This Court disagrees.

As indicated above, the record in this case clearly reveals that Baker's plea was knowing and voluntary: he consented in open court to the terms of the plea agreement, he understood the consequences of his guilty plea, and he consciously chose to plead rather than to go to trial. The meticulous record does not reveal any breach of agreement or other impropriety in the administration of the plea agreement. He was assisted by counsel within the terms of the sixth amendment, as interpreted by *Strickland, supra.*

■ Moreover, the guilty plea was entered and Baker was sentenced before the Honorable Henry R. Wilhoit, Jr., the same judge who denied Baker's motion for section 2255 relief below, who was therefore in a position to recall the facts and circumstances surrounding the plea after consulting the record. For these reasons, this Court finds that the motion and the files and records of the case conclusively show that Baker was entitled to no relief under section 2255, and that the District Court properly overruled his motion without holding an evidentiary hearing. The Supreme Court has noted, "[t]o allow indiscriminate hearings in federal postconviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241–2254, would eliminate the chief virtues of the plea system—speed, economy, and finality." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). *See also United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

■ "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). As the third circuit has noted, "[c]ourts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." *United States v. Crusco,* 536 F.2d 21, 24 (3d Cir.1976). Since the defendant knowingly and voluntarily pleaded guilty with the assistance of reasonably effective counsel, it appears that the ground for his challenge is precisely that: he expected a lighter sentence. The order of the District Court is affirmed.