**Anthony C. RAMOS, Petitioner–Appellant,**

v.

**Shirley A. ROGERS, Warden, Respondent–Appellee.**

No. 98–3196.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1998.

Decided March 5, 1999.

David H. Bodiker, Kort W. Gatterdam (argued and briefed), Public Defender's Office, Ohio Public Defender Commission, Columbus, OH, for Petitioner–Appellant.

Matthew J. Lampke (argued and briefed), Office of the Attorney General of Ohio, Capital Crimes Section, Columbus, OH, for Respondent–Appellee.

Before: WELLFORD, BOGGS, and MOORE, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (p. 566), delivered a separate concurring opinion.

## OPINION

BOGGS, Circuit Judge.

Anthony Ramos pleaded guilty to one count of rape and one count of gross sexual imposition in state court. He now seeks habeas relief on the ground that his guilty plea was not voluntary because he claims that his attorney had promised him, prior to the plea, that the trial court would release him on "supershock probation" after he served one year of his sentence. We affirm the denial of Ramos's petition, for even if he could establish that his attorney made him such a promise, the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea.

### I

Anthony Ramos was indicted in 1989 on one count of rape and one count of gross sexual imposition in Ohio state court. On February 7, 1990, Ramos pleaded guilty to the indictment in open court. The state court sentenced Ramos to a term of seven to twenty-five years in prison for the rape, and a consecutive term of two years of incarceration for the gross sexual imposition.

The plea agreement between Ramos and the government indicated that his punishment would be as follows:

[Rape]—5, 6, 7, 8, 9, or 10 to 25 yrs. and/or $10,000 fine—minimum may be actual time. No probation possible ~~although par~~-

~~ties agree that court can consider shock if no actual incarceration imposed.~~

[Gross Sexual Imposition]—1, 1½ or 2 yrs. and/or $5000 fine.

The language regarding "shock" that is stricken out above was apparently scratched out on the original by the attorneys. In response to written questions on the plea agreement asking whether any promises had been made to him to get him to plead guilty, and asking if other promises or representations had been made to him, Ramos wrote, "No."

At the plea hearing, the state trial judge then asked Ramos, "Do you understand that [rape] is not a probationable offense, that you are not going to receive probation under any circumstances?" Ramos replied, "Yes, Your Honor." The judge asked if any promises had been made to Ramos in order to get him to plead; Ramos answered, "No."

One week later, Ramos's trial attorney, Jack Bradley, wrote a letter to Ramos explaining that the judge had "referred your case for a probation report prior to imposing sentence." He further wrote:

> Although you are not eligible for probation on a rape offense, the judge did indicate that she would grant to you super-shock probation after you have served one year in prison. That means that after you have served one year, I can file a Motion for Early Release with the judge, and the judge will then suspend the further execution of your prison sentence and place you on probation.

"Supershock probation," which existed at the time of petitioner's plea hearing, is probation imposed in accordance with former OHIO REV.CODE ANN. § 2947.061 (1994),[1] which stated, in pertinent part:

> Subject to sections 2951.02 to 2951.09 of the Revised Code ..., the trial court may, upon the motion of the defendant, suspend the further execution of the defendant's sentence and place the defendant on probation upon such terms as the court determines, if the defendant was sentenced for an aggravated felony of the first, second, or third degree, is not serving a term of

actual incarceration, is confined in a state penal or reformatory institution, and files the motion at any time after serving six months in the custody of the department of rehabilitation and correction.

*Id.* at (B) (emphasis added). OHIO REV.CODE ANN. § 2951.02(F) (1994), however, states that "an offender shall not be placed on probation" when "[t]he offense involved is a violation of section 2907.02 or 2907.12 of the Revised Code." Ramos was convicted under OHIO REV.CODE § 2907.02, the Ohio rape statute. Bradley filed a motion for "supershock probation" on behalf of Ramos on February 10, 1991, which the trial court denied, presumably because rape is not an eligible offense under section 2947.061.

Ramos commenced state post-conviction proceedings in Ohio state court on August 26, 1992, by filing a motion to vacate his conviction and set aside his sentence. Ramos alleged that (1) Bradley provided him erroneous advice when entering his plea and, thus, his plea was not knowing and voluntary; and (2) Bradley provided ineffective assistance of counsel. Ramos submitted with the motion affidavits from himself and Bradley. Bradley averred that

> [d]uring the pretrial stage, I discussed the case with [the trial judge] and [the assistant prosecutor]. It was discussed that if Mr. Ramos pled guilty to the indictment that the court would impose sentence but release Mr. Ramos on supershock probation after he served one year in prison. We were all aware that [r]ape was nonprobationable but thought shock probation could be granted after six months.
>
> .... I believe he pled guilty based upon my assurance that he would be released on supershock after serving one year in prison.
>
> I told Anthony that the discussion I had with the Judge and the prosecutor would not be discussed on the record during his plea. I never thought there was a problem until after I filed the motion for supershock and the prosecutor objected and the judge denied the motion.

**1.** This portion of the Code was repealed on June 28, 1996. *See* 1996 Ohio Laws 185.

Ramos averred that Bradley had told him "that he had a deal where if I pled guilty the judge would agree to release me on supershock after I served one year in prison," that he "finally agreed to plead guilty but only because I thought I would get out in one year on supershock probation," and that Bradley "had said the deal was off the record so [Ramos should] just answer [the court's] questions at the plea as if no deals had been made."

During a hearing on the motion in state court, before a different judge, Ramos testified that both Bradley and the prosecutor "came to [him] with the deal" for supershock probation. He also testified that Bradley told him to say "no, there was no deal" when Ramos was questioned by the trial judge. Bradley testified that he was under the (mistaken) impression that supershock could be provided to Ramos, that he had "promised" Ramos supershock, and that he never told Ramos to lie on the record. The judge who accepted Ramos's plea, Judge Lynett McGough, and the trial prosecutor, Michael Illner, testified that no such off-the-record plea bargain existed. Ramos's motion was denied.

Ramos then filed a habeas petition pursuant to 28 U.S.C. § 2254, making the same arguments he had made in his state petition. At an evidentiary hearing before a magistrate judge on the federal petition, Ramos testified that *only* Bradley had approached him with the deal; that Bradley had told him he "would get super shock after a year"; that Bradley told him to "just go along with what the judge asked me"; and that he did not know the difference between supershock probation, probation, and parole. Bradley testified that he no longer had a specific recollection of the events surrounding Ramos's plea hearing.

The magistrate judge issued a report and recommendation advising the district court to deny Ramos's petition, The district court dismissed the petition on June 29, 1998. In its Memorandum and Order, the district court noted that Ramos's inconsistent testimony regarding the parties that had

"brought" him the plea agreement "undermin[ed] the entire factual predicate for Ramos's claims."

## II

■ Ramos contends that his plea was not voluntary and knowing because his attorney promised him that the trial court would release him on supershock probation after one year in prison. He then argues that the result of the plea, after the probation motion was denied, was not the agreement entered into by the parties. This claim must be analyzed in light of our opinion in *Baker v. United States*, 781 F.2d 85 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986), in which we ruled that

> where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry. Plea bargaining is an essential component of the administration of justice. Properly administered, it is to be encouraged. It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, a plea bargain itself is contractual in nature and subject to contract-law standards. To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court,* and that therefore there was no breach of agreement in this case.

*Id.* at 90 (citations and quotation marks omitted) (emphasis added).

■ Ramos does not contend that the state trial judge failed to follow proper plea colloquy procedures,[2] and it is clear that the

---

2. Ramos's plea colloquy was governed by OHIO R.CRIM. P. 11, since he pleaded guilty in Ohio

state court. For the limited purposes of this appeal, however, the plea colloquy can be said to

judge did follow those procedures. She asked Ramos, "Do you understand that [rape] is not a probationable offense, that you are not going to receive probation under any circumstances?" Ramos replied, "Yes, Your Honor." The judge asked if any promises had been made to Ramos in order to get him to plead; Ramos answered, "No."

■ Ramos, therefore, must demonstrate "extraordinary circumstances" that explain his failure to reveal alleged additional terms of the plea agreement. He offers us two. First, he argues that the agreement was "off the record" and, thus, he was not supposed to reveal its terms. However, the existence of any plea agreement, even an "off-the-record" one, is a question of fact, and thus a federal court finding that no such agreement existed is reviewed only for clear error. See Baker, 781 F.2d at 90. Considering that the state trial court judge and prosecutor both testified that such an "off-the-record" agreement did not, in fact, exist,[3] combined with the fact that such an agreement would have violated state law because rape was not even "shock probationable," it goes without saying that the district court's implicit holding that

an off-the-record agreement did not exist was not clearly erroneous.

■ Ramos's second explanation is that his counsel provided ineffective assistance by assuring him that he would receive shock probation if he pled guilty.[4] A claim of ineffective assistance, however, must be analyzed pursuant to the standard outlined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, the ineffective assistance alleged by Ramos must meet the Strickland standard in order to constitute an "extraordinary circumstance" to excuse the fact that he failed to disclose an alleged additional term of the plea agreement. To establish ineffective assistance of trial counsel, Ramos must show that (1) his attorney's performance was, under all of the circumstances, unreasonable under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. See Strickland, 466 U.S. at 687–94, 104 S.Ct. 2052.

Ramos claims that his trial counsel's performance meets the "deficient performance"[5] part of the Strickland test because counsel promised him "supershock probation for a

have conformed to the aspects of FED.R.CRIM.P. 11 (a rule similar but not identical to Ohio Rule 11) that assure constitutional due process, since the court's colloquy complied with, inter alia, Federal Rule 11's requirement that "[t]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." FED.R.CRIM.P. 11(d). Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process. See Norris v. Schotten, 146 F.3d 314, 328 (6th Cir.1998).

3. Bradley's state court affidavit is either deliberately deceptive or arguably perjurious. The affidavit states that "[i]t was discussed that ... the court would ... release Mr. Ramos on supershock probation after he served one year in prison," if he pleaded guilty; that "[w]e [he, the trial judge, and the prosecutor] ... thought shock probation could be granted after six months" in prison; and that he "never thought there was a problem until ... the judge denied the motion." This is clearly designed to convey the meaning that the judge and prosecutor had made an agreement for the early release. If Bradley ar-

gues that he did not intend such a meaning, the affidavit is deceptive. If he did intend the meaning, it appears to contradict the sworn testimony of the judge and prosecutor. J.A. at 410, 418.

At the state court habeas hearing, Bradley waffled on the issue of whether an agreement between the parties had been made, first noting that it was his belief that "at that time that we had a plea bargain," but later backtracking by referring to the alleged plea bargain as an "understanding" numerous times during cross-examination.

4. Ramos cites ineffective assistance as a separate ground for habeas relief. We believe it would be more logical to consider whether this alleged ineffective assistance would qualify as an "extraordinary circumstance" under Baker, for the inevitable result of granting Ramos habeas relief would, after all, be to grant him permission to withdraw his guilty plea. We do note, however, that if we chose to analyze ineffective assistance as a wholly separate claim, our analysis would nonetheless be identical to that laid out here.

5. The trial court did not rule on whether Bradley's performance was deficient; it simply denied Ramos's claim on the ground that any alleged deficient performance did not prejudice him.

plea to rape," which was not a probationable offense. Assuming *arguendo* that such a promise would, in fact, constitute deficient performance, it is questionable whether Ramos has established that such a promise was indeed made.

In his brief, Ramos marshals several items that he claims demonstrate that this promise had been made. First, he averred and testified that Bradley promised him supershock probation. However, the trial court felt that Ramos's change in testimony between the state and federal hearings regarding the parties that had "brought" him the plea agreement "undermin[ed] the entire factual predicate for [his] claims." A trial court's credibility determinations are entitled to considerable deference. *See, e.g., Hardaway v. Secretary of Health & Human Services,* 823 F.2d 922, 928 (6th Cir.1987). Second, Bradley claimed at the state court hearing that he had made this promise to Ramos. However, this claim by Bradley seems odd in light of the fact that language regarding "shock" that had initially been written on the plea agreement was apparently scratched out by the attorneys. Finally, Ramos introduces the letter written by Bradley in which Bradley notes, "Although you are not eligible for probation on a rape offense, the judge did indicate that she would grant to you super-shock probation after you have served one year in prison." However, this does not establish that Bradley had (1) made a *promise* to Ramos or (2) made any representation to Ramos before he entered his plea (this letter was written *after* Ramos entered his plea).

Even under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by Bradley caused him prejudice. This court has held that when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice

was incorrect. *See Warner v. United States,* 975 F.2d 1207, 1212 (6th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless. *Ibid.* In this case, Ramos claims that he relied on his counsel's promise that he would be placed on supershock probation in one year. However, the state trial court specifically asked Ramos, "Do you understand that [rape] is not a probationable offense, that you are not going to receive probation under any circumstances?" Ramos replied, "Yes, Your Honor." Thus, as in *Warner,* the trial judge specifically informed the defendant that his counsel's advice was incorrect.[6]

Moreover, the state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea. *See Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993), *cert. denied,* 510 U.S. 1099, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum,* 957 F.2d 1048, 1058 (2nd Cir.1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy.

6. Ramos contends that he was asked by the state trial judge only about whether he knew that the offense wasn't probationable, and that this question didn't specifically inquire into whether Ramos knew if the offense wasn't "*supershock* probationable." However, Ramos testified that he

did not know the difference between supershock probation and "regular" probation. In addition, such word games cannot be permitted to vitiate the use of simple words in court. For example, denial of owning a car is also denial of owning a *red* car.

Ramos argues that "[i]n order for the trial court's statements to cure the error, there had to be a realization in [his] mind that the deal he agreed to plead guilty to was not going to happen and, knowing that, he decided he still wanted to enter guilty pleas." In other words, Ramos wants us to rely on his alleged *subjective* impression of what the plea bargain was, rather than the bargain actually outlined *in the record.* The record in the case indicates that Ramos responded negatively (and, he wants us to believe, *untruthfully* ) to a judge's inquiry as to whether any promises had been made to him in order to get him to so plead.

If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners such as Ramos from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker,* 781 F.2d at 90.

■ We do understand that Ramos's claim is very troubling. A judge who would make or "bless" an off-the-record plea bargain is probably engaging in judicial misconduct.[7] A defense attorney who makes promises to his clients about the existence of off-the-record agreements in order to induce them to plead guilty is clearly engaging in professional misconduct, as would be a prosecutor who countenances such an agreement and perjury concerning it. *See, e.g.,* MODEL RULES OF PROFESSIONAL CONDUCT Rule 8.4 (1995) ("It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation...."). However, the very serious nature of claims such as these man-

dates that a defendant must be bound to the answers he provides during a plea colloquy. Allowing petitioner to withdraw his plea would essentially put this court in the position of remedying a violation of an unethical off-the-record plea agreement and condoning the practice by defendants of providing untruthful responses to questions during plea colloquies. This we simply will not do.

However, we will send copies of this opinion to the appropriate Ohio bar and judicial disciplinary bodies, as well as federal and state prosecutors.

### III

For the foregoing reasons, the denial of the petition is AFFIRMED.

HARRY W. WELLFORD, Circuit Judge, concurring.

I concur in the opinion in this troubling matter. I write separately to note my particular concern about the conduct of defendant's counsel at trial in this case. Both the state and the prosecutor denied any role in the supposed concealed "deal" which attorney Bradley related to Ramos. Bradley himself conceded that rape was not subject to probation, yet averred that he engineered a secret deal to permit a defendant with a criminal record, who admitted guilt in raping a minor child, to be released in a year's time. The actions of this counsel would appear to be worth investigating for professional misconduct.

---

**7.** There is absolutely no evidence, other than Bradley's arguably ambiguous state court affidavit and testimony, that the state trial judge

helped craft an off-the-record plea bargain in this case.