NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0428n.06

Case No. 16-6295

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 21, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| ASO POLA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE: SILER, CLAY, and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge.   Defendant Aso Pola, a citizen of Canada and lawful permanent resident of the United States, was sentenced in February 2010 to 46 months in prison after being convicted of one count of possessing oxycodone with intent to distribute. He was released from prison in September 2012 and, because his conviction subjected him to deportation, he assented to removal to Canada later that month. Pola continues to be aggrieved and seeks relief from the collateral consequences of his conviction.

The case has had a tortured procedural history, having already been visited twice by the Sixth Circuit in an untimely *pro se* appeal and in § 2255 proceedings. *See Pola v. United States*, 778 F.3d 525 (6th Cir. 2015).  Now before the court, on delayed direct appeal of his judgment of conviction, Pola contends he was denied effective assistance of counsel in the trial court in two ways.  The existing record fails to show entitlement to relief on either of Pola's ineffective-

assistance theories, despite the additional factual development afforded by earlier § 2255 proceedings. Accordingly, the district court's judgment is affirmed.

## I. BACKGROUND

Pola was born in Iraq, but is a citizen of Canada. On January 6, 2009, a federal grand jury indicted Pola and charged him with knowingly and intentionally possessing oxycodone with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). At the time of the indictment, Pola was in the United States as a lawful permanent resident and living in Louisville, Kentucky, with his wife and two children, all of whom are U.S. citizens. On September 21, 2009, Pola entered an *Alford* plea,[1] declining to admit guilt, but conceding that the government had sufficient evidence for a jury to find him guilty of the charged offense. On February 16, 2010, the district court sentenced him to 46 months' incarceration and three years' supervised release. On April 19, 2010, slightly more than two months after the judgment was entered, Pola filed a pro se notice of appeal. A panel of this court dismissed Pola's appeal as untimely.

On August 5, 2011, Pola filed a motion to vacate his sentence under 28 U.S.C. § 2255, alleging that his counsel was ineffective for failing to file a notice of appeal, among other claims. The district court denied the motion in January 2014, holding that Pola had failed to show deficiency in counsel's performance. On appeal, a panel of this court vacated the order denying relief and remanded the matter to the district court for an evidentiary hearing on the question

---

[1] In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Court recognized that a defendant may rationally and validly waive his right to trial and knowingly consent to the imposition of punishment for a charged offense notwithstanding his inability or unwillingness to admit participation in the crime. Pola decided to plead under *Alford* because he was addicted to oxycodone at the time of the charged conduct and had no recollection of the relevant events, and because he and his attorney acknowledged that the government's evidence was sufficient to warrant a jury finding that he was guilty of the charged offense.

whether Pola's counsel rendered ineffective assistance by failing to file a notice of appeal at Pola's request. *Pola*, 778 F.3d at 535–36.

Meanwhile, in September 2012, Pola had completed his prison sentence, had been released from the custody of the Bureau of Prisons, and had been deported to Canada. Still, Pola persevered in pursuit of his remedies. On remand to the district court, an evidentiary hearing was conducted in November 2015. In July 2016, the court issued an opinion and order finding that Pola had requested counsel to file an appeal and counsel failed to do so. Concluding that Pola had been denied effective assistance of counsel in this respect, the court granted Pola's § 2255 motion, vacated the original judgment, and ordered entry of a new judgment (re-imposing the forty-six-month term of imprisonment and noting that the term had already been served), so that Pola could perfect his right of appeal.

Represented by different counsel, Pola timely filed this appeal, asserting two challenges to the validity of his plea-based conviction. Due to counsel's deficient advice at the time he entered his plea, Pola contends he was denied his Sixth Amendment right to effective assistance of counsel in two additional ways. As a consequence, Pola further contends, the waiver of his right to trial was not "knowing and intelligent" and he was therefore denied due process, as guaranteed by the Fifth Amendment. Pola contends he should be allowed to withdraw his plea and face re-prosecution in the hope of undoing the conviction that triggered his deportation.

## II. ANALYSIS

### A. Standard of Review

Pola asserts claims for relief under both the Fifth Amendment and the Sixth Amendment. The relief requested is the same under both theories. In practical effect, the two claims are redundant. Granted, Pola's waiver of rights is not valid if it is shown not to have been "knowing

and intelligent." But Pola's waiver is alleged to have been not knowing and intelligent due to counsel's deficient representation. If Pola is able to prevail on either ineffective-assistance theory—showing deficient performance *and* prejudice—he will obtain the relief he asks for, irrespective of his entitlement to relief on the Fifth Amendment due process theory. Conversely, the notion that Pola could prevail on his due process theory without first showing ineffective assistance of counsel is implausible under the facts of this case. *See Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (recognizing that a defendant who pleads guilty on the advice of counsel may only attack the "voluntary and intelligent character" of the plea by showing that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases."). Hence, we focus on Pola's ineffective-assistance claim.

The relevant standards governing an ineffective-assistance claim are succinctly stated in *Lafler v. Cooper*, 566 U.S. 156 (2012), as follows:

> Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 133, 140 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Hill*, the Court held "the two-part *Strickland v. Washington* [466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58. The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Id*. at 57 (quoting *Strickland*, 466 U.S. at 688).

> \* \* \* \*

> To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. *See Frye*, 566 U.S. at 148 (noting that *Strickland*'s inquiry, as applied to advice with respect to plea bargains, turns on

"whether 'the result of the proceeding would have been different'" (quoting *Strickland*, 466 U.S. at 694); *see also Hill*, 474 U.S. at 59 ("The . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Ibid*.

*Id.* at 162–63.

In this appeal, Pola identifies two distinct ways in which counsel's representation fell below *Strickland*'s objective standard of reasonableness, to his detriment. First, Pola contends attorney Fred Partin failed to advise him of the immigration consequences of his guilty plea. Second, Pola contends counsel failed to accurately advise him of the likely duration of his sentence.

## B. Immigration Consequences

As a consequence of his *Alford* plea to the drug-trafficking charge, Pola now acknowledges that, being a citizen of Canada, he was subject to deportation after his conviction. Implying that he did not know this at the time of the plea hearing, Pola contends the record fails to show that either his attorney or the court advised him that such immigration consequences would flow from his conviction. Citing *Padilla v. Kentucky*, 559 U.S. 356 (2010), Pola contends this failure shows he was denied effective assistance of counsel at the time of the plea.

In *Padilla*, the defendant Jose Padilla had pled guilty to a drug-trafficking charge and then faced deportation as a consequence. In state-court post-conviction proceedings, Padilla challenged his conviction, alleging that his attorney did not advise him of the immigration consequences of his conviction. But for this deficiency, Padilla alleged, he would not have pled guilty, but would have insisted on going to trial. The Court held these allegations made out a

facially valid ineffective-assistance claim, holding that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. The Court remanded the matter to the state courts for development of the facts.

*Padilla* was decided one month after Pola was sentenced. But the rule of *Padilla* applies in this case because Pola's conviction has not yet become final.[2] Here, as in *Padilla*, Pola challenges the adequacy of counsel's advice regarding immigration consequences. The issue is raised for the first time in this, Pola's delayed direct appeal. Pola concedes he knew there would be immigration consequences, but claims his attorney did not advise him that the conviction would subject him to automatic deportation. Pola correctly argues that the transcript of the plea hearing includes no indication that his attorney expressly advised him that his *Alford* plea would subject him to deportation. However, the issue was *indirectly* raised at the plea hearing by the Assistant U.S. Attorney, who advised the district court that Pola "knows that . . . deportation proceedings are going to be initiated against him" after sentencing. R. 70, Plea Hrg. Tr. at 36, Page ID 282. In fact, the AUSA further advised the court that Pola's Canadian passport had already been surrendered to U.S. Immigration Customs and Enforcement ("ICE") Agent Tom Perryman, who was present in the courtroom. Despite these acknowledgements that Pola was aware of the specter of deportation, neither he nor his attorney raised any question, concern or

---

[2] The holding of *Padilla* does not apply retroactively to convictions that had become final before *Padilla* was decided. *Chaidez v. United States*, 568 U.S. 342, 344 (2013). Due to the unusual procedural history of this case, Pola's direct appeal is still pending, and his conviction has thus not yet become "final." *See Beard v. Banks*, 542 U.S. 406, 411 (2004) ("[C]onvictions are final for purposes of retroactivity analysis when the availability of direct appeal . . . has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely filed petition has been finally denied.") (internal quotation marks omitted). It follows that the "new rule" of *Padilla does* apply even though Pola's attorney could hardly have known at the time of the plea hearing in September 2009 that effective representation necessarily included the duty to advise Pola of the immigration consequences of his plea.

objection in the plea hearing. Hence, although counsel did not explicitly advise Pola on the record during the plea hearing that he would be subject to automatic deportation, the conclusion is inescapable, and unrefuted, that Pola was advised that his plea would implicate deportation.

The issue was also apparent, albeit not well developed, at Pola's sentencing hearing. Yet, again, Pola did not object to the prospect of deportation at sentencing either. Nor did his attorney. In fact, ICE Agent Perryman was on hand again during the sentencing hearing on February 16, 2010, to take Pola into custody *if* he were not sentenced to a prison term with the Bureau of Prisons. The issue of deportation became moot, for the time being, when the district court sentenced Pola to 46 months in prison, at the low end of the advisory Guidelines range.

Pola served his sentence and was released from the custody of the Bureau of Prisons on September 4, 2012. Two weeks later, he was removed by ICE to Canada, when Pola declined to contest deportation. In the meantime, his original appeal had been dismissed as untimely and he had filed his § 2255 motion to vacate his sentence. Pola's 25-page *pro se* motion for relief under § 2255, filed on August 5, 2011, asserted five grounds for relief, including two theories based on ineffective assistance of counsel. However, the motion contained no allegation of deficient advice concerning immigration consequences. The district court denied relief on all five grounds, adopting the magistrate judge's report and recommendation over Pola's objections.

Pola preserved his right to appeal the denial of § 2255 relief—by objecting to the report and recommendation—but only as to one ruling: the district court's denial of his request for an evidentiary hearing. Pola did in fact appeal this ruling and did prevail on appeal. The matter was remanded for an evidentiary hearing, but the scope of the hearing was limited to the question whether counsel was ineffective for having failed to file notice of appeal on Pola's behalf. The

district court conducted an evidentiary hearing and granted relief, effectively restoring Pola's right of appeal. Hence, this appeal.

This review of the procedural history brings us to the point: Pola's opening brief in this appeal, filed more than six years after his sentencing and nearly four years after he was deported, is the first mention of his displeasure over counsel's failure to adequately advise him about the immigration consequences of his plea. The issue not having been raised before, the claim finds little support in the existing district court record.[3] Not surprisingly, Pola's argument on appeal is based almost exclusively on the *facial* similarities between mere *allegations* in this case and in *Padilla*. The record is devoid of direct factual support for the allegation that attorney Partin did *not* advise Pola, or advised him erroneously, about the immigration consequences. Both Pola's affidavit and Partin's affidavit, filed in connection with the § 2255 motion, are silent on the issue. Nor did testimony received in the evidentiary hearing touch on the issue. And although there is no direct evidence that Partin *did* so advise Pola, all relevant indications, summarized above, show that Pola *was* advised that deportation was looming as soon as his term of imprisonment was completed. Counsel for the government so advised the district court in Pola's presence at the plea hearing. Yet, no question, concern or objection was heard from Pola or his attorney. Moreover, Pola's own testimony at the § 2255 evidentiary hearing strongly suggests he knew he would be subject to deportation after his prison sentence was completed, but hoped he would be sentenced to time served, and would be released and granted permission for voluntary departure to Canada.

---

[3] Despite the novelty of the issue, Pola insists that the record is adequately developed, due to the prior § 2255 proceedings, to enable a ruling on *this* ineffective-assistance claim at this time.

Pola's best argument asks the court to draw an inference that simply is not justified. He contends that Partin's evident "surprise" about the presence of ICE Agent Perryman at the sentencing hearing warrants a reasonable inference that Partin was not aware, and had not advised Pola, that he would be subject to deportation. A fair reading of Partin's testimony at the evidentiary hearing and his colloquy with the court at the start of the sentencing hearing indicates that his surprise was not related to the prospect of deportation as a consequence of the conviction. Rather, Partin was surprised by the possibility that Pola would be taken into ICE custody immediately *if*, as Partin had hoped, Pola was either sentenced to time served and released, or sentenced to a longer term but released pending self-surrender to the Marshal at a later date.

Partin thus appears to have miscalculated the likelihood of Pola's release from the courtroom after sentencing and the potential imminence of ICE involvement. Nevertheless, the possibility of imminent deportation quickly became moot when the district court imposed a prison sentence of 46 months, declined to allow self-surrender, and committed Pola to the custody of the Marshal for transfer to the Bureau of Prisons. In other words, Partin's misunderstanding and misadvisement of Pola about the likelihood of his being released after sentencing—even if suggestive of deficient performance—had no actual prejudicial effect on his immigration status because Pola was committed to the custody of the Marshal, not ICE.[4] Pola's immigration status and the matter of his deportation would then remain dormant until he was released from the custody of the Bureau of Prisons some thirty-one months later.

---

[4] Insofar as Partin's miscalculation regarding the likelihood of a below-Guidelines prison sentence contributed to his surprise, his error is addressed below in relation to Pola's second theory of ineffective representation.

Pola has thus failed to identify facts that satisfy either prong of the *Strickland* ineffective-assistance standard. He has not, on the present record, pointed to evidence, beyond his own bald statement, that Partin failed to advise him his conviction would result in his deportation. Nor has he shown prejudice. He has not shown how more accurate advice by Partin about the likelihood of his release from the courtroom after sentencing (which did not in fact have any impact on his immigration status) would have altered his decision to waive his right to trial and enter an *Alford* plea. That is, if, as his own testimony indicates, Pola was aware that his conviction would subject him to removal, voluntary or not, there is no apparent reason to conclude that Partin's having more clearly advised him that he might not be released from the courtroom after sentencing would have made a difference.

To show the requisite prejudice, Pola was obliged to show there was a reasonable probability that, but for counsel's errors, he would not have entered the *Alford* plea and would instead have insisted on going to trial. *Hill*, 474 U.S. at 59. The Supreme Court recently clarified this standard in *Lee v. United States*, 137 S. Ct. 1958 (2017), noting that the inquiry demands "a case-by-case examination of the totality of the evidence." *Id.* at 1966 (internal quotation marks omitted). The Court elaborated:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee*, at 1967. The *Lee* Court went on to grant relief for three reasons: it was undisputed that Lee's counsel had erroneously advised him that he would not be deported; deportation was

clearly the determinative issue in Lee's decision to plead guilty; and both Lee and his attorney testified that Lee would have gone to trial if he had known about the deportation consequences.

Here, in contrast with the substantial *evidence* presented in *Lee*, we have *only* Pola's *post hoc* assertions. Here, for the first time in his reply brief, we have Pola's argument that the government's case was hardly insurmountable and that he could have asserted substantial defenses to the charged offense. Even assuming Pola's attorney's advice was deficient, the record simply does not establish, by contemporaneous evidence, that Pola would not have entered the *Alford* plea had he known that he would not be sentenced to time served and would not be granted opportunity for voluntary departure to Canada.

In sum, the record is devoid of evidence supporting Pola's claim that he was denied effective assistance of counsel based on inadequate advisement of immigration consequences.

## C. Length of Sentence

Pola's second ineffective-assistance claim also suffers from infirmities. Pola contends his attorney overestimated the likelihood that the district court would impose a below-Guidelines sentence and led him to believe he would be sentenced to a prison term of only nine months and be released from the courtroom. This contention does enjoy some support in the record. At the time of the plea hearing, Pola's attorney filed a motion for Pola's release pending sentencing, stating that the parties contemplated a potential sentence of time served. Counsel for the government expressly disavowed this statement on the record in the plea hearing. Yet, the statement does substantiate Pola's position that Partin led him to believe his prison sentence would be shorter than it turned out to be.

On the other hand, at the same plea hearing, Pola said: (1) he understood that his plea subjected him to the possibility of a maximum prison term of twenty years; (2) that he had

"studied" the Sentencing Guidelines and "absolutely, 100 percent" understood them; (3) he understood that the court was not bound by any agreement between the parties as to what the sentence should be; (4) that no one had forced or coerced him to enter the *Alford* plea; and (5) he understood that, once accepted, his plea could not be withdrawn except upon a showing of a fair and just reason. Further, at the sentencing hearing, neither Pola nor his attorney lodged any objection to the advisory Guidelines range of 46 to 57 months proposed in the presentence report; neither the AUSA nor Pola's attorney presented persuasive grounds for departure or variance from the Guidelines range; and even after the sentence was tentatively announced and the court invited any final objections, neither Pola nor his attorney stated any objection. At no time did Pola move for leave to withdraw his plea.

Pola did raise this issue in his § 2255 motion, alleging he received ineffective assistance in that he was erroneously led to believe a sentence to time served was a "*fait accompli*." In support, Pola attached to his motion a copy of a letter from attorney Partin to the AUSA just before the plea hearing, explaining why Partin anticipated a sentence to time served. This theory was also supported by Pola's affidavit, stating that he and Partin both believed he would be sentenced to time served. Attorney Partin filed an affidavit as well, but it did not touch on the nature of his communications with Pola regarding the likely length of sentence.

Eventually, Pola was granted an evidentiary hearing, where both Pola and Partin testified. Pola testified that when he entered his plea, it was his understanding that there was a plea agreement, that he would be sentenced to time served, and that he would be allowed to return to Canada on his own. Pola said his understanding was based on what his attorney told him. Partin testified that he had been practicing law since 1971 and had represented criminal defendants in hundreds of cases during that period. Partin testified that he thought he had a very persuasive

argument that Pola should continue to be released and under supervision after sentencing. When he counseled Pola regarding the *Alford* plea, Partin said it was his "expectation and belief" that Pola would be sentenced to time served. He said he told Pola that this was his belief and he thought he had an excellent argument, but that the actual sentence might be different. This continued to be Partin's belief at the time of sentencing until it became apparent that an ICE agent was present to arrest Pola in the event the district court did not commit him to the custody of the Bureau of Prisons. Partin thought this development altered the chances that Pola would be released after sentencing. He therefore moved for a brief continuance, so Pola could get his affairs in order and to otherwise explore the issue before sentencing, but his motion for a continuance was denied.

Thus, in contrast with Pola's first ineffective-assistance claim, the record of district court proceedings gives a fairly clear picture of many facts material to his second claim (particularly the deficient performance prong), especially as augmented with the testimony elicited in the evidentiary hearing. Yet, the more fully developed record does not undermine the conclusion that Pola has still failed to show that his attorney's performance was constitutionally defective in the ways now asserted.

Granted, both Pola and Partin were undisputedly surprised and upset about the sentence imposed. And Pola may have been genuinely misled by Partin's opinion about the likelihood of a lenient sentence. Partin's testimony is undisputed, however, that, while he told Pola this was his belief, he also told Pola the actual sentence might be something different. Further, Pola was alerted to the government's objection to Partin's suggestion of a sentence to time served at the plea hearing. This possibility of a different outcome was made even clearer by the district court during the plea colloquy. Pola's hopes for a lenient sentence were disappointed, but the longer-

than-expected within-Guidelines sentence can hardly be deemed to have automatically transformed the *Alford* plea recommendation into objectively unreasonable advice—especially given the "strong presumption" of reasonableness that applies under *Strickland*, 466 U.S. at 689.

The plea hearing colloquy also reveals that Pola understood, notwithstanding his attorney's questionable advice about the likely length of sentence, that there was no agreement about the appropriate sentence; that the district judge would be responsible for imposing the sentence after a presentence report was prepared in accordance with the Sentencing Guidelines; and that he could be sentenced to a prison term of up to twenty years.

When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. *Id.* Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood. *Ramos*, 170 F.3d at 566.

And even if attorney Partin's communication to Pola of his expectation that he would be sentenced to time served were deemed objectively unreasonable, the record is devoid of evidence tending to support a finding of *Strickland* prejudice. To establish prejudice, Pola must show a reasonable probability that, but for his attorney's unreasonable assessment of the likely length of sentence, he would not have entered the *Alford* plea. Again, this assessment requires "examination of the totality of the evidence." *Lee*, 137 S. Ct. at 1966. Among the relevant

circumstances, the reviewing court considers whether the defendant had a viable defense, as well as the respective consequences of a conviction after trial and by plea.

The record simply does not support a finding of a "reasonable probability" that Pola would have chosen to go to trial but for counsel's questionable advice. In the evidentiary hearing, Pola was not asked whether, and did not testify that, he would have insisted on his right to trial if he had known he would be sentenced to more than nine months in prison. Nor has he made such an assertion by way of affidavit. Although Pola, due to his drug addiction, had no recollection of the events that resulted in the drug-trafficking charge against him, both he and his attorney acknowledged in the plea hearing that the government had enough evidence—including testimony, audio-recording, and phone records of a confidential informant—to convict him. By all appearances, there was nothing for Pola to gain and much to lose by insisting on a trial.

Lacking evidentiary support, Pola tries to make his claim based on argument, citing several reasons to conclude it would have been rational for him to go to trial if he had known he faced the possibility of a prison term longer than nine months. Despite his concessions about the strength of the government's proofs in the plea hearing, Pola now argues that the government's evidence is "hardly insurmountable," that the audio-recording is "virtually unintelligible," and that the confidential informant's credibility could have been impeachable. He points out that he has never admitted guilt and now characterizes himself as "an innocent man proclaiming his own innocence." Further, Pola now contends that the collateral consequences of permanent banishment from the United States and separation from his wife and children represented strong incentive to take a chance in trial.

Again, these are precisely the kinds of unsupported "*post hoc* assertions" and mere "expressed preferences" we are adjured to ignore in favor of "contemporaneous evidence." *Lee*, at 1967. In the end, Pola has failed to make his case based on evidence.

### III. CONCLUSION

The procedural history of this case makes for a convoluted analysis. Ultimately, however, it is abundantly clear that appellant Pola has, on the present record, failed to carry his burden on either prong of the *Strickland* standard that applies to the two ineffective-assistance claims asserted in this delayed direct appeal. It cannot be denied that deportation is, under the circumstances, a regrettably harsh consequence of Pola's conviction, but he has failed to show that any wrong is attributable to deficient representation by his attorney. Accordingly, the district court's judgment is **AFFIRMED**.