931 F.2d 57
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Woodrow REEVES, Defendant-Appellant.
 No. 90-6103.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 The defendant, William Woodrow Reeves, was indicted on various marijuana and narcotics charges on August 16, 1989. On April 2, 1990, Reeves entered a plea of guilty to one count of conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. section 846. At the plea hearing, the government represented that monitored telephone conversations between the defendant and a major marijuana and narcotics distributor, Gibson, supported by the testimony of various witnesses, would prove the defendant's involvement in the sale of up to 300 pounds of marijuana to Gibson. When questioned by the court, Reeves indicated his agreement with the government's summary of the facts. It is this agreement by the defendant as to the amount of marijuana he sold that became critical at the sentencing stage.
 
 
 2
 The sole issue on appeal arises from events at defendant's sentencing hearing on August 2, 1990. At that time, the defendant indicated to the court that he wished to challenge the facts to which he had agreed when entering his plea, and upon which the probation officer had relied in preparing the presentence report. Defendant wished to produce evidence from which the court could determine that a lesser amount of drugs was involved than that asserted at the plea. Defendant's counsel filed an affidavit stating that he possessed a tape recorded telephone conversation involving an alleged government witness, Karen Brewer, showing that Brewer had provided false information to the government. Counsel asserted that he believed the government had relied on this false information in preparing its statement of facts recited at the plea hearing, and agreed to by the defendant, resulting in defendant's being held accountable for a greater amount of marijuana then he actually had sold. The district court refused to receive the tape or call the person on the tape as a witness. It is alleged here that this was error.
 
 
 3
 In this instance, the district court did not commit reversible error in refusing to permit the defendant to call Brewer to testify as to the alleged false statements[1] because the proofs offered by the government at the plea, to which the defendant agreed, did not depend upon Brewer's testimony. Defense counsel indicated at the sentencing hearing that the defendant had "always believed that the government's case began with cooperation from ... Brewer." However, this assertion was the only evidence offered to support the proposition that Brewer was in any way connected with the case against the defendant. Brewer was not among those mentioned by the government in outlining its proofs at the plea hearing. At the sentencing, the government stated that Brewer had not been the initial informant, and was not a part of the government's case as to the quantity of marijuana involved in the crime, or in any other respect.
 
 
 4
 This court has stated that in order to prevail on a challenge based upon Federal Rule of Criminal Procedure 32(c)(3)(D), the defendant must show that "the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." United States v. Fry, 833 F.2d 664, 667 (6th Cir.1987). The evidence which the defendant sought to controvert here, however, was not relied upon in connection with sentencing. It is apparent from the record that the government had prepared a case in support of the facts stated at the plea hearing which did not rely upon the testimony of Brewer, and that Brewer's credibility was therefore irrelevant.
 
 
 5
 Our holding in this action is narrowly confined to its facts. This court is not in agreement with the government's representations to the district court that:
 
 
 6
 [T]he case law is clear that when a defendant stands before a court in guilty plea proceedings and is placed under oath and swears that certain facts are true, that the court is entitled to rely upon those facts, and the appellate courts will uphold the district courts throughout any potential attack to withdraw the plea, 2255 proceedings, attack upon the incompetence of counsel or any other subsequent appellate litigation, because the appellate courts as well as this court recognizes the--what an oath is.
 
 
 7
 Nor is the court in agreement with the statement of the district court "that Mr. Reeves is estopped to tender contrary position of that which he took at the time he pled guilty." Rule 32(c)(3)(D) makes perfectly clear that defendants may controvert the facts at the sentencing, regardless of what has occurred prior to that point. The Rule provides in pertinent part:
 
 
 8
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing ...
 
 
 9
 The plain language of the Rule clearly suggests that the defendant is not estopped after the plea hearing from challenging the facts of the case. The practice of seeking the defendant's assent to the facts of the government's case upon entering a plea, and the Rule allowing the defendant to controvert the facts upon which the presentence report is based, have entirely different purposes, which should not be interpreted in such a way as to cause needless conflict between differing policies. The former is an integral part of the assurances required to determine that the defendant has made an informed waiver of his rights by entering the plea of guilty; the latter allows the defendant to be heard as to the factual basis for the wider universe of circumstances upon which the sentence is based. The action of the court in not permitting evidence on irrelevant matters was not error, even if the statements made by the court in support of its ruling, were not correct. At most, they were harmless error.
 
 
 10
 AFFIRMED.
 
 
 11
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 12
 Although I concur in the court's judgment, I write separately to note some reservations about the dicta at the end of the opinion.
 
 
 13
 It is important to understand that defendant Reeves' plea of guilty to the conspiracy count of the indictment was entered pursuant to a plea bargain. In exchange for Mr. Reeves' agreement to plead guilty to a conspiracy which, as the government represented in open court, involved the distribution of approximately 300 pounds of marijuana, the government agreed to dismiss four counts charging Mr. Reeves with other offenses. It now turns out that Mr. Reeves wants to have his cake, in the form of the dismissal of four of the five counts against him, while eating the words in which he agreed with the government's representation as to the quantity of marijuana involved in the remaining count. On these facts, I have a good deal of sympathy with the district court's conclusion that Mr. Reeves was estopped to change the position he took in his testimony at the plea hearing.
 
 
 14
 The plea hearing was held on April 2, 1990, at which time Mr. Reeves raised his right hand and took an oath to tell the truth. (Joint Appendix 113.) The district court satisfied itself that Mr. Reeves understood the significance of the oath:
 
 
 15
 "THE COURT: You understand, sir, having been sworn your answers to my questions will be subject to penalties of perjury or false swearing, if you don't answer truthfully?
 
 
 16
 MR. REEVES: Yes, sir, Your Honor, I do." (Joint Appendix 114.)
 
 
 17
 The court then explained that the government would state its case. "You listen carefully," the court told Mr. Reeves, "and then I will ask you if you agree with the government's version of what you did." (Joint Appendix 115.)
 
 
 18
 The government proceeded to present a succinct outline of the essential facts, concluding with this statement: "During the course of the Court [-] authorized monitoring and continuing up through the fall of 1988, the defendant in this case, Mr. Reeves, supplied to Mr. Johnny Nelson Gibson and his representatives up to approximately 300 pounds of marijuana...." (Joint Appendix 116.) The following exchange then occurred:
 
 
 19
 "THE COURT: Mr. Reeves, do you agree with the government's summary of what you did?
 
 
 20
 MR. REEVES: Yes, I do, Your Honor." (Id.)
 
 
 21
 The court did not accept the guilty plea until the court was fully satisfied, on the basis of extensive inquiry, that the plea was being entered voluntarily. (Joint Appendix 123.)
 
 
 22
 Following the plea hearing, a United States Probation Officer prepared a pre-sentence investigation report that included this passage:
 
 
 23
 "During the investigation conducted by the Federal Bureau of Investigation, conversations between Johnny Nelson Gibson and Bruce Buchanan, which were monitored pursuant to Court authorization, revealed that REEVES had furnished to Gibson three hundred pounds of marijuana which had been obtained by Bruce Buchanan and other associates of Gibson's during the course of the conspiracy from REEVES for redistribution purposes. This three hundred pounds was supplied by REEVES at locations in the Northern District of Georgia to Bruce Buchanan and other associates of Gibson." (Joint Appendix 86.)
 
 
 24
 The pre-sentence report was prepared on May 11, 1990. On July 9, 1990, after reviewing the report, defendant Reeves filed a written motion for permission to introduce evidence tending to show that the amount of marijuana involved in the conspiracy totaled only 30 pounds, approximately, rather than 300 pounds.
 
 
 25
 At no time prior to the imposition of sentence did defendant Reeves move for withdrawal of his guilty plea.[1] Mr. Reeves had ample opportunity to move for withdrawal of the plea both before the sentencing hearing, which was not held until August 2, 1990, and during the hearing; he made no such motion.
 
 
 26
 I see nothing in Rule 32(c)(3)(D), Fed.R.Crim.P., that would permit defendant Reeves to retain the advantage of his plea agreement--dismissal of four of the five counts against him--while repudiating his sworn testimony as to the quantity of marijuana involved in the remaining count. Rule 32(2)(3)(D) merely requires the district court to make a finding as to any disputed portion of the pre-sentence report that is to be taken into account in sentencing. It is not unusual for courts to rely on concepts in the nature of estoppel when making findings of fact, and nothing in the plain language of Rule 32(c)(3)(D) prevented the district court from doing so here.
 
 
 27
 Rule 32(c)(3)(D) must be read in conjunction with Rule 32(c)(3)(A), which gives the defendant and his counsel "an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it." (Emphasis supplied.) In the case at bar the district court found that the quantity of marijuana furnished by defendant Reeves was approximately 300 pounds. The court chose to make this finding without letting Mr. Reeves introduce testimony in which he proposed (a) to repudiate the sworn testimony he had given earlier, and (b) to make his plea agreement more advantageous to himself than everyone understood it to be at the time the plea was accepted. Mr. Reeves might or might not have been estopped to repudiate his prior testimony if he had sought to withdraw his plea, but I think he was clearly estopped from doing so where he was attempting, in effect, to renegotiate the plea bargain.
 
 
 28
 Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." Santobello v. New York, 404 U.S. 257, 260 (1971), as quoted in Baker v. United States, 781 F.2d 85, 90 (6th Cir.1986). "[W]here the [trial] court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." Baker, 781 F.2d at 90, quoting Moore v. Estelle, 526 F.2d 690, 696-97 (5th Cir.), cert. denied, 426 U.S. 953 (1976). The district court scrupulously followed the required procedure in taking Mr. Reeves' testimony at the plea hearing, and on the narrow facts presented by this record I think it would have been wrong to let Mr. Reeves disavow his testimony without disavowing his plea agreement as well.
 
 
 29
 Facts, after all, are facts. If it was a fact that defendant Reeves had supplied up to 300 pounds of marijuana to Johnny Nelson Gibson, as Reeves admitted when the court was passing on the waiver of his right to trial, it was no less a fact that he had supplied up to 300 pounds of marijuana when the court was passing sentence under the guidelines. There can be only one correct answer to the question of how much marijuana Mr. Reeves actually supplied, and the purpose for which the question is asked has nothing to do with what the correct answer is.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defense counsel made the following offer of proof:
 [R]ecently I had a telephone conversation with my client, long after the pre-sentence report had been prepared. He said, "I don't know if we can do anything with what I've come across or not, but I took a telephone call from an individual. Her name is Bonita McCampbell." She is a sister of Mr. Gibson, another co-defendant in the case, of course.
 And Ms. McCampbell had had conversations with Mr. Brewer in which Ms. Brewer was complaining to Ms. McCampbell that she had gotten herself in a position where 200 pounds of marijuana was being attributed to her, and it should not have been attributed to her. And it had become a factor of the punishment which she was expected to receive, and that she had worked with her lawyer to remove the problem that that extra 200 pounds involved.
 The conversation involved between Ms. Brewer and Ms. McCampbell, that the transaction had been described as one involving Mr. Reeves in going to Georgia and getting a 200-pound load so to speak from Mr. Reeves, bringing it back for Mr. Gibson and his cronies to distribute.
 Ms. Brewer stated to Ms. McCampbell in so many words that "Yes, I told the government this happened, but it did not actually happen and I'm trying to get it fixed."
 While it is obvious the incentive Brewer had to lie as to her own sentencing, it is not clear why the earlier information should likewise be assumed to have been fabricated.
 
 
 [1]
 Rule 32(d), Fed.R.Crim.P., provides as follows:
 "Plea Withdrawal. If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. Sec. 2255."