{¶ 38} I believe this is a simple case that is being made difficult for no apparent reason. The state of Ohio had a "deal" with this individual; and when the political winds changed in Portage County, the state no longer felt compelled to live up to its end of the bargain. That is not the law of Ohio.
 {¶ 39} A plea bargain is the grease that makes the wheels of justice function. Were the practice to be outlawed, every court in the state would be inundated with meaningless trials over the obvious. More ominously, more criminals would be walking the streets. From time immemorial, every trial lawyer with experience has known that it is far better to settle for half a loaf of bread rather than arrive home with no bread at all.
 {¶ 40} As stated by the Sixth Circuit Court of Appeals, "`[a] plea bargain itself is contractual in nature and "subject to contract-law standards."'"[1] A breached plea agreement may be remedied by specific performance.[2] Ohio law has consistently recognized that a settlement agreement constitutes a binding contract between the two parties.[3] In the case at bar, Smith's agreement, like any plea agreement, is a valid contract with the state. In exchange for the reduced sentence resulting from the state dropping the aggravated felony specification, Smith waived the right to appeal his conviction. No less than a private party to a settlement agreement, the state of Ohio must be held to the agreements it enters into.
 {¶ 41} The facts in this matter are both clear and disturbing. The state of Ohio, through its agent, the former prosecuting attorney for Portage County, entered into a binding contract that induced appellant to surrender certain constitutional rights in order to get a better "deal." This fact pattern is not only permissible, it is part of our jurisprudence.[4] It permits an appellant to accept responsibility for his actions; and it ensures that a guilty person does not walk out of the courthouse a free man.
 {¶ 42} For reasons known only to the state, the contract between the parties was breached when the new prosecuting attorney challenged the parole eligibility of Smith. This court should rectify such misbehavior on the part of a state agency by enforcing the contract between the parties. As explained by the Supreme Court of Ohio, adopting the rationale of the United States Supreme Court:
 {¶ 43} "The holding in Carpenter is essentially a synthesis of contract and criminal law in a particular factual setting. Its supporting analysis is ultimately derived from the proposition that plea agreements are a necessary and desirable part of the administration of criminal justice and, therefore, `"must be attended by safeguards to insure the defendant what is reasonably due in the circumstances."'[5] The court in Carpenter found that under the circumstances of that case, the defendant reasonably `anticipated that by pleading guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any charges regarding this incident.'[6] In order to enforce this expectation, the court found it necessary to recognize what is basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident."[7]
 {¶ 44} The record in this matter, if left unchallenged, constitutes a manifest injustice. At the time Smith entered into his contract with the state of Ohio, he could reasonably anticipate that if he (1) took the deal and (2) behaved himself in prison, (3) his debt to society would be repaid in ten years. He had no way to anticipate that the Ohio General Assembly would rewrite the rules of sentencing in Ohio; that the Adult Parole Authority would rewrite their procedures for parole; or that the prosecuting attorney of Portage County would be replaced by a new prosecutor who wished to revisit this ten-year-old case.
 {¶ 45} While all these factors make for good reading in a novel, they are legally irrelevant to the case at hand. A deal was struck. The parties are bound by the terms of the deal. The state violated the terms of the agreement. Crim. R. 32.1 ("to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea") is specifically designed to correct manifest injustice.
 {¶ 46} The United States Supreme Court has stated that, under the right circumstances, a defendant may enforce a plea agreement through the remedy of specific performance.[8] The state breached the agreement, and appellant is entitled to the remedy of specific performance. However, since the Portage County Common Pleas Court cannot provide specific performance in the form of "releasing" Smith after having served ten years, the only other equitable remedy would be to permit the withdrawal of the plea. To do otherwise would be to reward the state of Ohio for violating the agreement. The criminal justice system should not let the state off the hook because its current officeholders do not like the deal struck by their predecessors.
[1] Baker v. United States (C.A.6, 1986), 781 F.2d 85, 90, quoting United States v. Krasn (C.A.9, 1980), 614 F.2d 1229, 1233, quoting UnitedStates v. Arnett (C.A. 9, 1979), 628 F.2d 1162, 1164.
[2] Santobello v. New York (1971), 404 U.S. 257, 263.
[3] Spercel v. Sterling Industries (1972), 31 Ohio St.2d 36, paragraph one of the syllabus.
[4] See Baker v. United States, 781 F.2d at 90.
[5] State v. Carpenter (1993), 68 Ohio St.3d 59, 61 quoting Santobellov. New York, 404 U.S. at 262.
[6] State v. Carpenter, 68 Ohio St.3d at 61-62.
[7] State v. Zima (2004), 102 Ohio St.3d 61, 2004-Ohio-1807, at ¶ 11.
[8] Santobello v. New York, 404 U.S. at 263.