[Cite as *State v. Calloway*, 2011-Ohio-4257.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 10 MA 147 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| NICHOLAS CALLOWAY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Mahoning
                                                        County Common Pleas Court,
                                                        Case Nos. 09CR1403, 10CR177.


JUDGMENT:                                      Affirmed.


APPEARANCES:
For Plaintiff-Appellee:                       Attorney Paul J. Gains
                                                        Prosecuting Attorney
                                                        Attorney Ralph M. Rivera
                                                        Assistant Prosecuting Attorney
                                                        21 W. Boardman St., 6th Floor
                                                        Youngstown, OH 44503

For Defendant-Appellant:                   Attorney Edward A. Czopur
                                                        42 N. Phelps Street
                                                        Youngstown, OH 44503



JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich



                                                        Dated: August 19, 2011

[Cite as *State v. Calloway*, 2011-Ohio-4257.]
DeGenaro, J.

{¶1} Defendant-Appellant, Nicholas A. Calloway, appeals the August 11, 2010 judgment of the Mahoning County Court of Common Pleas, denying his motion to withdraw his guilty plea, convicting him of five counts of burglary and sentencing him accordingly. Calloway argues that the State breached the plea agreement; that the trial court erred in finding that Calloway's motion to withdraw his guilty plea constituted a breach of the plea agreement; and that the trial court abused its discretion by denying Calloway's pre-sentence motion to withdraw his guilty plea.

{¶2} Calloway's arguments are meritless. The facts demonstrate that Calloway breached the plea agreement first by demanding that the prosecutor further reduce his sentence, and then completely refusing to cooperate with the State on pending investigations as he had agreed to do. Any error in the trial court's conclusion that Calloway's motion to withdraw his plea was a breach of the plea agreement is harmless, since the court properly concluded that Calloway had repudiated the agreement much earlier. Finally, the trial court's decision to deny Calloway's motion to withdraw his guilty plea was reasonable, and not an abuse of discretion, since the majority of the *Cuthbertson* factors weigh heavily against the motion. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On January 7, 2010, in trial court Case Number 2009 CR 1403, Calloway was indicted by a Mahoning County grand jury on one count of burglary (R.C. 2911.12(A)(2)(C)), a second-degree felony. On February 11, 2010, in trial court Case Number 2010 CR 177, Calloway was indicted on four counts of burglary (R.C. 2911.12(A)(2)(C)), second-degree felonies, and one count of receiving stolen property. The cases proceeded together in the trial court. Calloway pled not guilty and counsel was appointed to represent him. He filed a motion to suppress which was denied after a hearing.

{¶4} On June 1, 2010, Calloway entered into a Crim.R. 11(F) plea agreement with the State. Calloway agreed to plead guilty to five counts of burglary. In turn, the State agreed to dismiss the receiving stolen property charge, and to recommend a four-

year prison sentence "provided that Defendant cooperates in other investigations to the satisfaction of counsel for the State."

{¶5} The trial court held a plea hearing on June 1, 2010, at which the terms of the plea deal were reviewed. The trial court engaged in a lengthy colloquy with Calloway regarding the rights he would give up by pleading guilty. Importantly, the trial court specified that it was not bound by the State's sentencing recommendation and that the court could, at its discretion, sentence Calloway to maximum consecutive prison terms totaling 40 years in the penitentiary. At the end of the hearing, the court accepted Calloway's plea as knowingly, voluntarily and intelligently made, and a pre-sentence investigation was ordered and prepared.

{¶6} On August 6, 2010, the case was called for a sentencing hearing. Calloway stated he wanted to withdraw his guilty plea because the State breached the plea agreement. The State countered that Calloway had breached the plea agreement by failing to cooperate in other investigations as agreed. It had been the State's understanding that Calloway would provide information regarding an unsolved Youngstown murder along with other burglaries. However, Calloway completely failed to cooperate. Specifically, the prosecutor stated:

{¶7} "An effort was made by counsel for the State and the defense to meet with Mr. Calloway about a month ago in the Mahoning County Justice Center for the purpose of finding out which jurisdictions and which cases particularly he was going to cooperate in before I even brought detectives into the matter, and at that time Mr. Calloway refused to uphold his end of the bargain and has made no effort to do so since that time."

{¶8} Later the prosecutor elaborated that during that meeting his intention was "to question Mr. Calloway as to what jurisdictions I should be inviting with me to a future meeting. I had some idea it probably involved Campbell, but I didn't know if Youngstown, Boardman, who else might be along. The meeting between myself and Mr. Calloway and Mr. Gentile probably didn't last longer than five or ten minutes because I was not met with any offer of information but with an insistence that I renegotiate the plea agreement and that I promise Mr. Calloway judicial release. I explained that I couldn't do that and that I

was there to -- what's the word -- to enact the agreement we had already agreed upon. And then Attorney Gentile talked to his client, at that time, alone. And at the end of that conversation, Mr. Calloway had no information to provide to me and has no time until conveniently today offered to do so since then."

{¶9} Defense counsel generally agreed that was what occurred: "Well, that recitation, Your Honor, is pretty accurate in the sense that Mr. Calloway, perhaps, exercised more stubbornness at the time when he should have been willing and able to continue with this proposal -- " Moreover, Calloway himself admitted that he had refused to cooperate.

{¶10} It was Calloway's position that he was somehow confused by the original agreement, but that he had *now* decided he would cooperate with prosecutors. The State viewed Calloway's actions as "an ongoing pattern on Mr. Calloway's part to manipulate the system where he repeatedly offers cooperation and when asked to put up or shut up retreats back into being confused again." The State represented that Calloway was given multiple opportunities to cooperate but declined to do so.

{¶11} After considering the applicable factors, the trial court denied the motion, and proceeded to sentencing. One of the burglary victims made a statement, and Calloway made a brief statement in mitigation of sentence. The trial court sentenced Calloway to a term of two years imprisonment on each of the five charges to be served consecutively, for an aggregate term of ten years.

### Breach of the Plea Agreement

{¶12} Calloway's first and third assignments of error raise similar issues and will be discussed together asserting respectively:

{¶13} "The State breached its plea agreement with Appellant by not allowing Appellant to perform under the terms thereof, thereby warranting reversal."

{¶14} "The trial court erred in finding that Appellant breached the plea agreement by making a motion to vacate his plea."

{¶15} Calloway first argues that the plea agreement was invalid because it failed to specify the degree of cooperation required or when such cooperation is due. Calloway

correctly notes that plea agreements are contractual in nature and interpreted under contract theories. *State v. Vari*, 7th Dist. No. 07-MA-142, 2010-Ohio-1300, at ¶25, citing *Baker v. United States* (C.A.6, 1986), 781 F.2d 85, 90.

{¶16} The plea agreement expressly required that Calloway cooperate in other investigations "to the satisfaction of counsel for the State." Satisfaction clauses are permissible in contracts. "Where a contract contains a satisfaction clause which must appeal to the personal taste or preference of a party, the contract must be substantially performed to the satisfaction of that party." *Heffner v. Reynolds* (2002), 149 Ohio App.3d 339, 343, 777 N.E.2d 312, quoting, *Herold v. Herold* (Dec. 22, 1992), 10th Dist. No. 92AP-36, citing *Thermal Master, Inc. v. Greenhill* (Sept. 29, 1987), 10th Dist. No. 86AP-745, and *Schatzinger v. Lake View Land & Improvement Co.* (1910), 13 Ohio C.C. (N.S.) 410, 1910 WL 1212. And, contracts that do not specify a time *are* enforceable. "When there is no time for performance stated in a contract, the presumption is that the contract is to be performed within a reasonable time." *Catz Ent., Inc. v. Valdes*, 7th Dist. Nos. 07 MA 201, 07 MA 202, 08 MA 68, 2009-Ohio-4962, citing *Rock v. Monarch Bldg. Co.* (1912), 87 Ohio St. 244, 252, 100 N.E. 887, 889.

{¶17} Calloway next argues that the State breached the plea agreement. However, it was Calloway who breached the agreement.

{¶18} In *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, this court stated:

{¶19} " '[W]hen a contracting party repudiates the contract prior to the time that such party's performance is due, an "anticipatory breach" or, more precisely, an "anticipatory repudiation" occurs, and the injured party has an immediate action for damages for total breach. Farnsworth, Contracts (1982) 627-628, Section 8.20.' *Farmers Comm. Co. v. Burks* (1998), 130 Ohio App.3d 158, 172, 719 N.E.2d 980. The nonbreaching party may also rely on the anticipatory repudiation as a defense against a subsequent breach-of-contract claim. *Premium Enterprises, Inc. v. T.S., Inc.* (Feb. 9, 1999), 9th Dist. No. 2751-M, 1999 WL 61488; 13 Williston on Contracts (4th Ed.2000) 668, Section 39:37.

{¶20} " 'After acceptance, an attempted withdrawal amounts to an anticipatory breach of contract.' Keyes, Government Contracts (2d Ed.1996) 307, Section 14.43.

{¶21} "One form of anticipatory repudiation occurs when a party declares that he or she will not perform the terms of the contract unless the contract price is increased. *Nuco Plastics, Inc. v. Universal Plastics, Inc.* (1991), 76 Ohio App.3d 137, 141, 601 N.E.2d 152. Anticipatory repudiation does not rescind a contract, but, rather, constitutes a breach of contract. *Am. Bronze Corp. v. Streamway Products* (1982), 8 Ohio App.3d 223, 228, 8 OBR 295, 456 N.E.2d 1295.

{¶22} "Notice of anticipatory repudiation gives the offended party the freedom to cancel its obligations under the contract. Farnsworth, Contracts (1982) 627-628, Section 8.20; *Farmers Comm. Co.*, supra, 130 Ohio App.3d at 172, 719 N.E.2d 980." *Daniel E. Terreri & Sons* at ¶44-47.

{¶23} The prosecutor stated that he met with Calloway after the plea hearing for information Calloway had regarding several unsolved crimes, specifically a murder, as Calloway had agreed to do as part of his plea agreement. Instead of cooperating, Calloway demanded a guarantee of judicial release and then refused to provide *any* information. Defense counsel and Calloway conceded during the plea withdrawal hearing that Calloway failed to cooperate. Because Calloway anticipatorily repudiated the agreement, which constitutes a full breach, the State was released from its obligations under the agreement.

{¶24} Turning to Calloway's third assignment of error that the trial court erred by concluding that Calloway's motion to withdraw his guilty plea constituted a breach of the plea agreement, this argument is meritless. During the hearing the court stated:

{¶25} "THE COURT: * * * [Y]ou don't have the right to this deal when you seek to vacate the plea. If you want to change the deal, the deal is off in your mind and the deal is off in their mind. So right now you are in a position where you have pled to these offenses and you're here for sentencing. If I deny your motion to vacate the plea and proceed to sentencing, I am not bound by this deal that you guys made. You could be sentenced to anything I could sentence you to. Do you understand that?

{¶26} "THE DEFENDANT: Yes, Your Honor."

{¶27} This does not constitute error. Although in *Vari*, supra, at ¶30, a majority of this court concluded that "under the unique facts and circumstances of the case" the trial court erred by determining that the defendant breached the plea agreement by making a motion to withdraw his plea, *Vari* is factually distinguishable. *Vari* turned on the fact that the trial court actively participated by expressly stating during the plea hearing that it agreed to impose the sentence recommended by the State. Id.

{¶28} By contrast, during the plea hearing in this case, the trial court never stated that it was bound by the four-year sentence that the State agreed to recommend in exchange for the guilty plea. Rather, the court fully forewarned Calloway that it could sentence him to up to 40 years in prison:

{¶29} "THE COURT: Now, upon acceptance of your plea, I can proceed immediately to sentence you to terms of anywhere from two to eight years on each of these five counts, and I can order them served consecutively to one another, and if it's appropriate under the circumstances, in my discretion, I can sentence you to maximum consecutive terms which could add up to as much as 40 years in a penitentiary. So do you understand those potential penalties and the maximums involved?

{¶30} "THE DEFENDANT: Yes, Your Honor."

{¶31} "* * *

{¶32} "THE COURT: Do you understand your sentence is entirely up to me regardless of any recommendations?

{¶33} "THE DEFENDANT: Yes, Your Honor."

{¶34} Calloway had already breached the agreement before moving to withdraw his plea by refusing to cooperate during his meeting with the prosecutor. Accordingly, Calloway's first and third assignments of error are meritless.

### Motion to Withdraw Guilty Plea

{¶35} Finally, in his second assignment of error, Calloway asserts:

{¶36} "The trial court committed an abuse of discretition [sic] in failing to allow Appellant to withdraw his plea as requested prior to sentencing."

{¶37} Pursuant to Crim.R. 32.1, a defendant may move to withdraw his guilty plea before his sentence is imposed. This motion can be made orally at the sentencing hearing. See *State v. Glavic* (2001), 143 Ohio App.3d 583, 588-589, 758 N.E.2d 728. Motions to withdraw a guilty plea before sentencing "should be freely and liberally granted." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. At the same time, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id. at paragraph one of the syllabus. A defendant is only entitled to withdraw his plea when "there is a reasonable and legitimate basis for the withdrawal of the plea." Id.

{¶38} This Court has previously stated that "the factors that are weighed in considering a pre-sentence motion to withdraw a plea include the following: (1) whether the state will be prejudiced by withdrawal, (2) the representation afforded to the defendant by counsel, (3) the extent of the Crim.R. 11 plea hearing, (4) the extent of the hearing on the motion to withdraw, (5) whether the trial court gave full and fair consideration to the motion, (6) whether the timing of the motion was reasonable, (7) the reasons for the motion, (8) whether the defendant understood the nature of the charges and potential sentences, (9) whether the accused was perhaps not guilty or had a complete defense to the charge." *State v. Cuthbertson* (2000), 139 Ohio App.3d 895, 898-899, 746 N.E.2d 197. No one of these factors is conclusive. Id. at 899.

{¶39} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Reed*, 7th Dist. No. 04 MA 236, 2005-Ohio-2925, at ¶7, quoting *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, at paragraph two of the syllabus. A trial court's decision "to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court," and thus will not be disturbed by a reviewing court absent an abuse of discretion. *Xie* at paragraph two of the syllabus. The trial court abuses that discretion when its ruling is "unreasonable, arbitrary or unconscionable," which is "more than an error of judgment." Id. at 527.

{¶40} Upon consideration of the nine factors in *Cuthbertson*, the trial court's decision to deny Calloway's motion to withdraw his guilty plea was not an abuse of discretion.

{¶41} First, although the trial court concluded that withdrawal would not prejudice the State, this one factor is not dispositive. See *State v. Scott*, 7th Dist. No. 08 MA 12, 2008-Ohio-5043, at ¶15-16. Second, trial counsel was not ineffective. Counsel's comment during the plea withdrawal/sentencing hearing that Calloway was "understandably confused" about what was required of him with regards to the plea agreement does not demonstrate counsel's ineptitude. Rather, as will be explained in the context of the third factor, Calloway's guilty plea was entered knowingly, intelligently, and voluntarily with the effective assistance of counsel. Moreover, counsel was able to negotiate a four year sentence despite the fact that Calloway had a lengthy criminal record, was under post-release control at the time the offenses were committed, and was facing a maximum 40 year prison sentence.

{¶42} Third, Calloway's plea was knowing, voluntary and intelligent. The trial court fully complied with all Crim.R. 11(C) requirements during its colloquy with Calloway. The trial court explained to Calloway that by pleading guilty he would relinquish his constitutional rights to a jury trial; to have the State prove his guilt beyond a reasonable doubt; to confront adverse witnesses; and to compel the attendance of witnesses he might wish to present in his favor. The trial court also explained that Calloway could not be compelled to testify against himself at trial. The trial court explained that by pleading guilty Calloway would waive these constitutional rights. Calloway indicated his complete understanding regarding the waiver of these rights. This demonstrates strict compliance with Crim.R. 11(C)(2)(c).

{¶43} The trial court also fully explained to Calloway his nonconstitutional rights. The trial court ensured that Calloway understood the nature of the charges against him; that his guilty plea constituted a complete admission of guilt; the maximum penalties involved; and that he was pleading guilty to probationable offenses. The trial court informed Calloway about post-release control, in the event Calloway was sentenced to a

prison term. Further, the trial court informed Calloway that upon acceptance of his plea the court could proceed directly to judgment and sentencing. This demonstrates substantial compliance with Crim.R. 11(C)(2)(a)(b). Calloway indicated that he understood the rights he would waive by pleading guilty, and that he wished to go forward with the plea. There is simply no indication that Calloway did not understand the terms of the plea agreement, the nature of the charges, or the sentencing ranges.

{¶44} Fourth, the trial court gave a full and fair hearing on the matter. Calloway's argument to the contrary is circular. The trial court went through the *Cuthbertson* factors during the hearing. The trial court properly noted that it was not in the best position to determine some of the factors, such as the extent of the hearing on the motion. Fifth, the trial court gave full and fair consideration of the motion. The trial court inquired extensively into Calloway's reasons for requesting the plea withdrawal and engaged in a lengthy discussion with Calloway and his counsel regarding the motion. The mere fact that the court expressed its opinion that withdrawing the plea was a bad choice considering the lengthy prison term Calloway could face, does not mean that the court failed to give the motion full and fair consideration.

{¶45} Sixth, the trial court noted the timing of Calloway's motion was unreasonable, as it was presented orally during Calloway's sentencing hearing. Calloway asserts he raised the motion at the earliest possible time after realizing the State would not abide by its recommendation. However, the record does not demonstrate that the State's position was a "surprise" at sentencing. Seventh, the reasons for Calloway's motion are not compelling. He claimed he did not understand his plea agreement, yet during the plea hearing he indicated his full understanding thereof. Further, he stated he wanted to have "a fair trial," but did not elaborate.

{¶46} Eighth, Calloway entered his plea with an understanding of the nature of the charges and their sentencing ranges. Calloway was given a full explanation of the charges at his original plea hearing and the trial court fully explained the potential prison terms he faced. Ninth, Calloway never claimed innocence of the crimes. His professed desire to "have a fair trial," does not equate with a claim of innocence. Nor was there any

indication that Calloway had a complete defense to the charge. To the contrary, as can be gleaned from the suppression hearing, the State had substantial evidence against him.

{¶47} The trial court heard Calloway's arguments during the hearing on the motion to withdraw the plea, and was in the best position to determine Calloway's credibility and determine the weight of the assertions in support of the motion. *Reed*, supra. Given the foregoing analysis, although the first *Cuthbertson* factor weighs in favor of Calloway's motion, the remaining factors weigh heavily against it. Therefore, the trial court did not abuse its discretion when it denied Calloway's motion to withdraw his guilty plea. Accordingly, Calloway's second assignment of error is meritless.

{¶48} In conclusion, the facts demonstrate that Calloway breached the plea agreement first by demanding the prosecutor further reduce his sentence and then completely refusing to cooperate with the State on pending investigations. The trial court properly concluded that Calloway had repudiated the plea agreement. Finally, the trial court's decision to deny Calloway's motion to withdraw his guilty plea was reasonable, and not an abuse of discretion, since the majority of the *Cuthbertson* factors weigh heavily against the motion. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.