**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0119n.06**

**No. 17-1759**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 08, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JON NATHANIEL-NUNGHONS BRENNER, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE:** **BOGGS, CLAY, and LARSEN, Circuit Judges.**

**BOGGS, Circuit Judge.** In November 2016, Jon Nathaniel-Nunghons Brenner, a member of the Grand Traverse Band of Ottawa and Chippewa Indians ("Grand Traverse Band"), pleaded guilty to aggravated sexual abuse in Indian Country, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), 1151, and 1153. The United States District Court for the Western District of Michigan accepted the plea agreement and sentenced Brenner to 360 months in prison, to be followed by supervised release for life. Brenner now appeals that conviction, arguing for the first time to this court that his guilty plea is invalid because it was not knowingly and intelligently made. Specifically, he contends that he did not understand that the district court could consider charges that had been dismissed by the government when calculating his sentencing guidelines range.

For the reasons outlined below, we affirm Brenner's conviction.

I

A

In May 2016, a federal grand jury indicted Brenner on six counts of aggravated sexual abuse of an Indian less than 12-years-old, in violation of 18 U.S.C. §§ 2241(c), 2246(2)(A)–(D), 1151, and 1153. Specifically, Brenner was alleged to have intentionally touched the genitals of a five-year-old member of the Grand Traverse Band and to have sexually penetrated her orally, vaginally, and anally. Each count, which detailed a different "sexual act" as defined by 18 U.S.C. § 2246(2), carried a 30-year mandatory minimum sentence. 18 U.S.C. § 2241(c). On November 18, 2016, the government filed a superseding felony information, charging Brenner with aggravated sexual abuse by force or threat, in violation of 18 U.S.C. § 2241(a)(1), which carries a maximum penalty of life imprisonment but has no mandatory minimum.

Three days later, on November 21, 2016, Brenner signed a plea agreement, in which he pleaded guilty to the superseding information. In it, Brenner admitted the factual basis for his guilty plea; stated that he understood the elements of the crime, which were listed; acknowledged that a violation of 18 U.S.C. § 2241(a)(1) carries a maximum term of life imprisonment; and waived his trial rights and appellate rights, subject to certain exceptions, such as if his guilty plea was involuntary or unknowing. In exchange, the government agreed to move to dismiss the original indictment. The plea agreement stated, however, "that in determining the sentence the Court may consider the dismissed charges in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guidelines range."

Both Brenner and his counsel attested that they had discussed the plea agreement in detail and that Brenner understood its terms. Directly preceding Brenner's signature, the agreement reads,

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, *of the sentencing provisions, and of the consequences of entering into this agreement*. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Emphasis added). Brenner's counsel confirmed that he had "carefully discussed every part of this agreement with [his] client," that he had "fully advised [Brenner] of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement," and that "[t]o [his] knowledge, [Brenner's] decision to enter into this agreement is an informed and voluntary one."

On November 23, 2016, a magistrate judge conducted a plea hearing, at which Brenner stated that he wished to plead guilty to the superseding information. After ensuring that Brenner did not have a physical or mental impairment that would make it difficult for him to follow the proceedings and that Brenner's judgment was not clouded by his prescription medications—Zoloft for depression, and Risperdal for "other issues"—or other substances, the court read the superseding information, discussed the maximum possible penalties, and asked whether the defendant had had the opportunity "to talk with [his counsel] thoroughly about what [his] options [were], what [his] choices [were], and in particular, [his] decision to plead guilty." Brenner confirmed that he had, that he had "had the chance to talk with [counsel] about the sentencing guidelines and how those might apply to [his] case," and that he understood that the sentencing guidelines were advisory and that no one knew for certain what his guidelines range might be.

The magistrate judge then confirmed that Brenner was aware of the trial rights that he would be waiving by pleading guilty, had read the plea agreement, and had carefully reviewed it with his attorney.

Near the end of the hearing, the magistrate judge asked the prosecutor "to put on the record the pertinent parts of the plea agreement." After listing the elements of the crime to which Brenner was pleading guilty, the prosecutor detailed each paragraph of the agreement. Regarding sentencing, she stated that:

> The United States Attorney's office is agreeing to move to dismiss the original indictment against the defendant at the time of sentencing, however, in determining the sentence the Court may consider the dismissed charges, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guideline range.

Shortly thereafter, when asked to explain what made him guilty of the crime to which he was pleading, Brenner replied that he had "knowingly engage[d] and attempt[ed] to engage in a sexual act by using force against [the victim] while alone with [her] in the bedroom," that he had "grab[bed her], pull[ed] her on to the bed, and forcibly inserted [his] penis into her vagina"; that [the victim] was five-years-old at the time; that they were both members of the Grand Traverse Band; and that the abuse occurred on property held in trust for the Grand Traverse Band.

Having found Brenner's plea to be knowing and voluntary, the magistrate judge stated that she would recommend that the district court accept it. On December 13, 2016, the district court adopted the magistrate judge's report and recommendation and accepted the defendant's guilty plea. As per the terms of the plea agreement, a presentence report (PSR) was prepared to assist the district court with sentencing. In relevant part, it recommended a five-level enhancement, pursuant to U.S.S.G. §4B1.5(b)(1), for a "pattern of activity involving prohibited sexual conduct," viz., the multiple sexual assaults that were detailed in the indictment.

On May 8, 2017, Brenner filed an objection to the recommended enhancement, later explaining that he had "not [understood] relevant conduct and thought because the six-count Indictment had been dismissed, . . . he should be held responsible just for his conduct in the single count in the Felony Information." However, after his counsel explained the notion of "relevant conduct," Brenner withdrew his objection.[1] The defendant's sentencing memorandum was accordingly limited to a request for a downward variance, based primarily on a mental-health history that included diagnoses for mood disorder and attention deficit hyperactivity disorder, as well as symptoms of fetal alcohol syndrome and a personality disorder.

At the sentencing hearing on June 15, 2017, the district court accepted the plea agreement. After confirming that the defendant understood the PSR and that he had withdrawn his objection to the offense-level recommendation, the court noted that Brenner's advisory guidelines range was between 360 months and life, based upon an offense level of 42 and a Criminal History Category of IV. The court then denied the defense's request for a downward variance—it expressed skepticism over Brenner's psychiatric report due to the absence of psychiatric testing, questioned the relevance of the purported diagnoses to the criminal conduct, and emphasized the seriousness of the offense—and sentenced the defendant to 360 months of incarceration. All parties stated that they had no objections to the sentence.

On June 29, 2017, Brenner filed a timely notice of appeal.

B

Brenner now contests the validity of his guilty plea. Although it is unclear whether he is raising a constitutional claim or a Federal Rule of Criminal Procedure 11 claim, Brenner's general contention is that the plea was not knowing and intelligent because he did not understand

---

[1] Brenner's counsel at the sentencing hearing was not the same as the one who negotiated the plea agreement and who appeared with the defendant at the plea hearing.

that the dismissed charges might factor into the calculation of his guidelines range.[2]  In support

of this position, the defendant offers two pieces of evidence.  First, he highlights a discrepancy

between the wording of the agreement and the prosecutor's summation of it at the plea hearing.

While the plea agreement expressly states that "in determining the sentence the Court may

consider the dismissed charges *in determining the applicable Sentencing Guidelines range*," the

prosecutor's paraphrase of the provision omitted the italicized phrase.  (Emphasis added).  This

omission, the defendant asserts, is significant because it means that he was never informed at the

plea hearing that the dismissed conduct could be used to determine the guideline range.  Second,

Brenner points to his initial objection to the five-level pattern-of-conduct enhancement—and his

counsel's written submission withdrawing that objection—as proof that he did not understand the

notion of "relevant conduct" at the time of his plea.

## II

We review de novo the validity of a guilty plea.  *United States v. Catchings*, 708 F.3d

710, 716 (6th Cir. 2013) (citing *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)); *see

also United States v. Weatherspoon*, 487 F. App'x 965, 966 (6th Cir. 2012) (per curiam).

Because a guilty plea operates as a waiver of important constitutional rights, it is "valid only if

done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant

circumstances and likely consequences.'"  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)

(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A defendant's guilty plea is

intelligently made where "[h]e was advised by competent counsel, he was made aware of the

---

[2] Furthermore, although Brenner frames his appeal as a challenge to whether his plea was knowing, intelligent, and voluntary, he does not argue that his plea was involuntary.  We therefore restrict our review to the question of whether his plea was knowing and intelligent.  *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("[A]rguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

nature of the charge against him, and there [is] nothing to indicate that he was incompetent or otherwise not in control of his mental faculties[.]" *Brady*, 397 U.S. at 756.

"[T]o ensure that a guilty plea is knowing and voluntary, [Rule 11] lay[s] out the steps a trial judge must take before accepting . . . a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002); *see also McCarthy v. United States*, 394 U.S. 459, 465 (1969). Specifically, it "requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005) (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)). Notably, "where the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

When a defendant first raises a Rule 11 claim on appeal, as is the case here, we review for plain error. *Webb*, 403 F.3d at 378. Under plain-error review, we may reverse only if the defendant establishes that (1) there was an error, (2) it is plain, (3) it affects substantial rights, and (4) it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). In the context of a Rule 11 objection, the third requirement places the burden on the defendant to "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Regardless of whether we construe Brenner as raising a constitutional or a Rule 11 claim, his guilty plea was valid. Contrary to Brenner's insinuation, the magistrate judge did not err, let

alone commit plain error, by failing to mention at the plea hearing that the dismissed conduct could be used to calculate his sentencing guidelines range. That is because neither Rule 11 nor our court's precedents impose such a requirement. *United States v. Mizori*, 604 F. App'x 413, 416 (6th Cir. 2015).[3] Brenner's apparent Rule 11 claim is therefore meritless.

Nor is there any merit to Brenner's claim that his plea was not knowingly and intelligently made. The minor discrepancy between the language of the plea agreement and the prosecutor's characterization of the provision at the plea hearing does not render the agreement invalid. The reason for this is two-fold. First, the prosecutor's paraphrase of the agreement is wholly consistent with the unambiguous language of Brenner's plea deal. The agreement explicitly states that the district court may consider the dismissed charges when calculating Brenner's advisory guidelines range. At the plea hearing, the prosecutor stated that "in determining the sentence the Court may consider the dismissed charges." Given that a defendant's sentence is determined, at least in part, by first calculating the applicable guidelines range, there is no basis for concluding that the prosecutor's wording, by itself, created the "fundamental misunderstanding" alleged by Brenner.

Second, both Brenner and his counsel repeatedly indicated that Brenner understood the terms of the deal. The written agreement, which the defendant and his attorney signed, states that they "carefully discussed every part" and that Brenner understood "the consequences of entering into [the] agreement." At the plea hearing, the defendant once again confirmed that he had had the opportunity to talk with counsel about his decision to plead guilty, that they had discussed how the sentencing guidelines might be applied to his case, and that he had carefully reviewed the plea agreement with his attorney. Given these assurances and the fact that the

---

[3] "We recognize that our unpublished opinions carry no precedential weight; they often do, however, carry persuasive weight." *United States v. Webber,* 208 F.3d 545, 551 n.3 (6th Cir. 2000).

prosecutor's summation of the agreement was consistent with its actual terms, there is simply no plausible basis for finding that the defendant suffered from the confusion now claimed.

Brenner's initial objection to the PSR—submitted nearly six months after the district court accepted his guilty plea—does not undermine this conclusion. The defendant does not contend—nor is there any evidence to conclude—that his plea-hearing counsel was incompetent, that he did not understand the nature of the charges, or that he was incompetent at the hearing. His plea was therefore intelligently made. *Brady*, 397 U.S. at 756. Furthermore, because a close review of the record shows that the magistrate judge scrupulously fulfilled her duties under Rule 11, Brenner is bound by his responses to her inquiries. *Baker*, 781 F.2d at 90. Specifically, he is bound by his statements to the court that he (1) had spoken with his counsel "*thoroughly* about what [his] options [were], what [his] choices [were], and in particular, [his] decision to plead guilty," (2) had "had the chance to talk [with counsel] about the sentencing guidelines and how those might apply to [his] case," and (3) had "had the chance to read the plea agreement and go over [it] carefully" with counsel. Redacted Transcript of Plea Proceedings at 7–8, *United States v. Brenner*, No. 1:16cr101 (W.D. Mich. Nov. 23, 2016) (emphasis added). Brenner's guilty plea was therefore knowing and intelligent.

The judgement of the district court is therefore **AFFIRMED**.